In re RIVER TRANSPORTATION COMPANY, Debtor.

In re William H. BARTON, Jr. and Barbara M. Barton, Debtors.

NASHVILLE CITY BANK & TRUST COMPANY, Plaintiff,

v.

James W. ARMSTRONG, Jr., Peggy H. Armstrong, River Transportation Company, William H. Barton, Jr. and Barbara M. Barton, Defendants.

William H. BARTON, Jr. and Barbara M. Barton, Counter-plaintiffs,

v.

NASHVILLE CITY BANK & TRUST COMPANY, Counter-defendant.

Bankruptcy Nos. 382–00328, 381–03432. Adv. Nos. 382–0153, 382–0354.

United States Bankruptcy Court, M.D. Tennessee.

Nov. 30, 1983.

Samuel D. Lipshie, Nashville, Tenn., for Nashville City Bank and Trust Co.

William H. Tate, Nashville, Tenn., for William H. and Barbara M. Barton.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on the joint oral motion made by the parties at a pretrial hearing to clarify this court's authority to conduct a jury trial of the issues presented in this adversary proceeding. Upon consideration of the relevant authorities and the entire record, this court is of the opinion that the parties may proceed with the jury trial set in this court on December 6, 1983.

The following shall represent findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

William H. Barton, Jr. and Barbara M. Barton filed a joint Chapter 11 petition in this court on October 27, 1981. On February 4, 1982, River Transportation Company (hereinafter "River Transportation") also filed a Chapter 11 petition in this court.

On March 5, 1982, River Transportation submitted an application to remove a cause of action styled *Nashville City Bank & Trust Co. v. Armstrong*, No. 81–1734–III, from the Chancery Court for Davidson County, Tennessee. This case had been initiated by Nashville City Bank to recover a judgment against James W. Armstrong, Jr., Peggy H. Armstrong, and the aforementioned debtors for an outstanding note obligation of $549,631.80 and for an overdraft of $164,256.17 on the checking account of H & S Transportation Company which these defendants had allegedly guaranteed. Nashville City Bank also requested a sepa-

rate judgment against James W. Armstrong, Jr. for $152,793.83 as the amount due on two outstanding notes.

The defendants William H. Barton, Jr. and Barbara M. Barton responded by filing in the bankruptcy court a counterclaim objecting to the Bank's claim on the basis of fraud, seeking to recover a preferential transfer from the Bank, and requesting a judgment against the Bank for $250,000.00 compensatory damages and $500,000.00 punitive damages for wrongful attachment and outrageous conduct. The Bartons demanded a trial by jury of all these issues.

The court granted River Transportation's application for removal on July 12, 1982. Nashville City Bank then filed a motion to strike the Barton's demand for a jury as untimely. This motion was denied by the court on October 26, 1982, and the jury trial was set for four days beginning December 6, 1983. However, at a pretrial hearing on November 1, 1983, all parties expressed their concern that the jury trial could not proceed in this court because the district court's local rule delegating authority to this court to act in all bankruptcy cases and proceedings specifically forbids this court from conducting jury trials.[1]

The sole issue confronting the court is whether this jury trial can proceed in light of the prohibition contained in the district court's local rule. A brief history of the events leading to the adoption of this local rule is necessary to comprehend the problem presented. On June 28, 1982, the United States Supreme Court held the broad grant of jurisdiction to the bankruptcy courts contained in § 241(a) of the Bankruptcy Reform Act of 1978 unconstitutional. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). As the Court explained, § 241(a) "impermissibly removed most, if not all, of 'the essential attributes of the judicial power' from the Art III

district court, and has vested those attributes in a non-Art III adjunct." *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 102 S.Ct. at 2879–2880. The Supreme Court nevertheless stayed the effect of its decision until October 4, 1982, in order to give Congress an opportunity to reconstitute the bankruptcy system. This deadline was subsequently extended to December 24, 1982. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 103 S.Ct. 199–200, 74 L.Ed.2d 160 (1982). When Congress failed to act by this date, the Court refused to continue the stay any longer. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 103 S.Ct. 662, 74 L.Ed.2d 942 (1982).

In order to continue the administration of the bankruptcy system once the *Northern Pipeline* decision became effective, the United States District Court for the Middle District of Tennessee, as did other district courts throughout the country, adopted the "interim emergency rule" promulgated by the Judicial Conference of the United States as Administrative Order No. 28–1. This local rule referred all bankruptcy cases and proceedings to this court. The rule apparently sought to circumvent the jurisdictional defects of the Bankruptcy Reform Act by instituting certain changes in the procedure formerly followed under the Reform Act, including (1) providing that the reference to a bankruptcy judge could be withdrawn by the district court at any time on its own motion or on timely motion by a party, (2) prohibiting bankruptcy judges from conducting jury trials, (3) requiring a bankruptcy judge to submit findings, conclusions and a proposed judgment or order to the district judge in all "related proceedings" unless the parties consent to entry of the judgment by the bankruptcy judge and (4) allowing a district judge, in reviewing a bankruptcy court order or a judgment, to hold a hearing and receive such evidence as appropriate without the need to give any

---

1. Administrative Order 28–1(d)(1)(D) provides:
    "d. *Powers of Bankruptcy Judges*
    (1) The bankruptcy judges may perform in referred bankruptcy cases and proceedings all acts and duties necessary for the handling

of those cases and proceedings except that the bankruptcy judges may not conduct:

.    .    .    .    .

    (D) jury trials."

deference to the findings of the bankruptcy court.

Shortly after the rule was enacted, this court found it unconstitutional on several grounds and concluded that neither the district nor bankruptcy court possessed jurisdiction over cases initiated after the effective date of *Northern Pipeline. In re Conley,* 26 B.R. 885 (Bkrtcy.M.D.Tenn.1983). The district court, in an opinion by Chief Judge L. Clure Morton, affirmed this court's decision finding the local rule unconstitutional but reversed the holding that the district court lacked jurisdiction over bankruptcy cases. *Walter E. Heller & Co. v. Matlock Trailer Corp.,* 27 B.R. 318 (D.M.D. Tenn.1983). The district court therefore vacated the local rule and instituted several new administrative orders which, among other things, appointed the bankruptcy judges for this district standing masters pursuant to Federal Rule of Civil Procedure 53(a) to assist the district court in the administration of all bankruptcy cases and proceedings. The effect of these orders was to require virtually all orders and judgments previously entered by the bankruptcy court to be signed by the district court so as to protect litigants from any possible jurisdictional problem.

The Court of Appeals for the Sixth Circuit subsequently upheld the constitutionality of the emergency interim rule on April 1, 1983. *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254 (6th Cir.1983). On August 1, 1983, the new Federal Rules of Bankruptcy Procedure promulgated by the United States Supreme Court and approved after amendment by Congress became effective. These Rules specifically prohibited the use of standing masters in cases under the Bankruptcy Code. Fed.R.Bankr.P. 9031. Apparently in response to these events, the United States District Court for the Middle District of Tennessee vacated the "standing master" system and reinstated the emergency local rule on August 2, 1983. Adm.Order No. 28–8. The local rule has continued in operation in this district, albeit with some difficulties, until this date.

The fallout from the *Northern Pipeline* decision rendered more than a year ago continues to plague the bankruptcy system. The specific problem now before the court is whether the new Bankruptcy Rules conflict with the reinstituted local rule's prohibition against bankruptcy courts conducting jury trials and, if so, which set of rules prevails. According to its preamble, the provisions of the local rule are directed towards remedying the *Northern Pipeline* defects. However this court can only speculate as to why the drafters of this emergency rule, whomever they may be, forbid bankruptcy judges from conducting jury trials. In legislatively enacted legislation, a court can review legislative history and determine through committee reports, debate and bill drafts the meaning and intent of statutory provisions. Unfortunately, judicially created legislation, such as is before this court, provides no such guidance.

The court nonetheless finds that the local rule does conflict with the new Bankruptcy Rules regarding the conduct of jury trials. Rule 9015 of the Federal Rules of Bankruptcy Procedure governs jury trial requests made in a bankruptcy case or proceeding. Fed.R.Bankr.P. 9015 provides in relevant part:

"(a) *Trial by Jury.* Issues triable of right by jury shall, if timely demanded, be by jury, unless the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury.

(b) *Demand.*

(1) *Time; Form.* Any party may demand a trial by jury of any issue triable by a jury by serving on the other parties a demand therefor in writing not later than 10 days after service of the last pleading directed to such issue. The demand may be indorsed on a pleading of the party. When a jury trial is demanded it shall be designated by the clerk in the docket as a jury matter.

(2) *Specification of Issues.* In his demand a party may specify the issues which he wishes so tried; otherwise he shall be deemed to have demanded trial by jury of all the issues so triable. If he has demanded trial by jury of only some of the issues, any other party within 10 days after service of the demand or such lesser time as the court may order, may serve a demand for trial by jury of any other or all of the issues.

(3) *Determination by Court.* On motion or on its own initiative the court may determine whether there is a right to trial by jury of the issues for which a jury trial is demanded or whether a demand for trial by jury in a proceeding on a contested petition shall be granted."

The comments to Rule 9015 state that whether a party is entitled to a jury trial is controlled by 28 U.S.C.A. § 1480(a) (West Supp.1982), which provides:

"(a) Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury, in a case under title 11 or in a proceeding arising under title 11 or arising in or related to a case under title 11, that is provided by any statute in effect on September 30, 1979."

The "court" in Rule 9015 which will determine whether to grant a jury trial request and conduct the jury trial is defined by Fed.R.Bankr.P. 9001(2) to include both the United States district courts defined in § 1(10) of the former Bankruptcy Act *and* the United States bankruptcy courts created under 28 U.S.C. § 151.[2]

This definition explicitly allows a jury trial to be available in either court. Rule 9015, enacted by the Supreme Court and Congress more than a year after the *Northern Pipeline* decision and several months after the promulgation of the local rule, contains absolutely no hint that the United States bankruptcy court's exclusive power to hold jury trials in bankruptcy cases and proceedings arising under the 1978 Bankruptcy Reform Act is abridged or curtailed by either *Northern Pipeline* or the local rule. By forbidding the United States bankruptcy court from conducting jury trials, the local rule impermissibly denies a party's option under Rule 9015 to a trial by jury in the bankruptcy court.

Because the new bankruptcy rules continue to allow bankruptcy judges to preside over jury trials, they must override the contrary premise contained in the local rule. As Circuit Judge Aldisert cogently explained in *Frank v. Arnold (In re Morrissey),* 717 F.2d 100, 104 (3d Cir.1983) which concluded that the new bankruptcy rules clearly erroneous standard of review of bankruptcy decisions on appeal took precedence over the contrary *de novo* standard of

---

2. This court is aware that District Judge Robert E. DeMascio, Chairman of the Bankruptcy Committee of the Judicial Conference of the United States, recently opined to Chief Judge Carl B. Rubin of the Southern District of Ohio as to the meaning of "court." This opinion, while completely contrary to the stated definitional language of Federal Rule of Bankruptcy Procedure 9001(2), would if correct support the proposition that the court granting and conducting the jury trial would necessarily be the bankruptcy court rather than the district court. As Judge DeMascio's letter states:

September 30, 1983
Chief Judge Carl B. Rubin
United States District Court
Southern District of Ohio
Cincinnati, Ohio 45202
Dear Judge Rubin:
  I have your September 27, 1983 letter concerning the scope of Bankruptcy Rule 5002.

That rule was promulgated solely for the bankruptcy court created pursuant to the Bankruptcy Reform Act of 1978. Accordingly, it cannot and does not apply to the United States District Court. A United States District Judge is not included in the phrase "any judge of the court" because that phrase refers only to the 1978 bankruptcy court.
  To be sure I was correct, I spoke to Professor King, a member of the Bankruptcy Committee. He readily agreed with this view expressed in our earlier telephone conversation.
  Of course, if the relationship described in Rule 5002 is with a district judge handling a bankruptcy appeal or otherwise, he/she would be guided by the disqualification rules that have always been liberally construed.
  Sincerely,
  /ss/ Robert E. Demascio
  U.S. District Judge

review contained in the emergency local rule:

> "First, a statute vests the exclusive power for promulgating rules of bankruptcy in the Supreme Court and the Congress of the United States, 28 U.S.C. § 2075, and not in the United States district courts. Bankruptcy Rule 8013 was promulgated in conformance with this statutory provision. Further, although the new rules quite properly allow each local court to adopt any local rules of practice and procedure it desires, such local rules are clearly subordinate to, and may not be inconsistent with, the national rules. Bankruptcy Rule 9029. Thus, neither the Judicial Conference nor the several district courts of the United States have the authority to propose and enact local bankruptcy rules that conflict with the new bankruptcy rules."

This finding is also consistent with the Sixth Circuit's mandate that the local rule must reflect as closely as possible the bankruptcy system envisioned by Congress while not transgressing Article III of the United States Constitution as interpreted in *Northern Pipeline. White Motor Corp. v. Citibank, N.A.,* 704 F.2d at 263. Allowing bankruptcy courts the right to conduct jury trials conforms with Congressional intent as codified by 28 U.S.C. § 1480. Moreover, the bifurcation of jury trials from other matters before the bankruptcy court would raise complex questions of procedure and cause needless delay. For instance, once a party requests a jury trial, should this court immediately certify the question to the district court or decide the request itself? And, once the jury enters a verdict, can the district court refer any subsequent motions concerning the verdict to this court for decision? Procedural entanglements such as these will not only obstruct and hinder the administration of the bankruptcy estate but also tempt parties to use a jury trial request as a delaying device.

Nor does permitting a bankruptcy court to preside over jury trials offend the principles set forth in *Northern Pipeline.* As the Sixth Circuit emphasized in *White Motor,* the "thrust of the *Northern Pipeline* holding is that peripheral, non-traditional bankruptcy issues such as claims by the bankrupt against non-creditors cannot be adjudicated by a non-Art. III judge." *White Motor Corp. v. Citibank, N.A.,* 704 F.2d at 263. Nowhere in *Northern Pipeline* does the Court state that allowing an Article I court to conduct a jury trial is violative of the provisions of Article III of the Constitution. In fact, jury trials have traditionally been permitted by non-Article I courts, including United States magistrates under 28 U.S. C.A. § 636 (West Supp.1983), special and standing masters appointed pursuant to Federal Rule of Civil Procedure 53, and courts established by Congress in the District of Columbia, *see Pernell v. Southall Realty,* 416 U.S. 363, 370, 94 S.Ct. 1723, 1727, 40 L.Ed.2d 198 (1974); *Capital Traction Co. v. Hof,* 174 U.S. 1, 5, 19 S.Ct. 580, 582, 43 L.Ed. 873 (1899). This court can therefore find no reason why a non-Article III bankruptcy judge presiding over a trial by jury would violate the strictures of Article III.[3] A judge's duty in such cases involves primarily rulings upon evidentiary matters and instructing the jury on the law, functions which a bankruptcy judge daily performs in the administration of non-jury matters.

This court is cognizant of the Ninth Circuit's decision in *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.,* 712 F.2d 1305 (9th Cir.1983), concluding that magistrates are prohibited from entering judgments, a function reserved for Article III officers, and its clear implication that non-Article III bankruptcy judges would also be precluded from entering judgments. The *Pacemaker* decision limits a magistrate's duties to "presiding over a trial and recommending a disposition," a structure strikingly similar to the standing

---

**3.** This court is aware of but not persuaded by the comments in the legislative history of the Bankruptcy Reform Act suggesting that an "executive branch court" could not hold a trial by jury. H.R.Rep. No. 595, 95th Cong., 1st Sess. 38, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5999.

master system initially utilized in this district.[4] *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.,* 712 F.2d at 1314. This court is nonetheless bound to follow the Sixth Circuit's decision in *White Motor* upholding the validity of the local rule and permitting this court to enter judgments in bankruptcy cases and proceedings.

The court will accordingly enter an order declaring the local rule's provision prohibiting this court from conducting jury trials to be null and void.

IT IS, THEREFORE, SO ORDERED.

---

**4.** The decision in *Pacemaker* was set for an *en banc* hearing for reconsideration on November 15, 1983.