In the Matter of PAULA SAKER & CO., INC., Debtor.

Harold YOUNG, as Trustee, Plaintiff,

v.

PETER J. SAKER, INC. and Allied Design Corp., Defendants.

Harold YOUNG, as Trustee, Plaintiff,

v.

ALLIED DESIGN CORP., American Packaging Corp., Duo Textiles, Inc., Harry Kantrowitz Co., Harry M. Gibson, Jr., Majestic Shapes, Inc., Scotto's Service Station, Inc., S.L. Sommers Co., Inc., Stillwater, Inc., Michael Varinsky and Westwood, Inc., Defendants.

Bankruptcy No. 80 B 10175.
Adv. Nos. 83–5870A, 83–5871A.

United States Bankruptcy Court,
S.D. New York.

Feb. 23, 1984.

Horvath & Young, New York City, for trustee; Harold Young, New York City, of counsel.

Burwell, Hansen, Manley & Peters, Washington, D.C., for defendants Allied Design Corp., Peter J. Saker, Inc., American Packaging Corp., Duo Textiles, Inc., Harry M. Gibson, Jr., Majestic Shapes, Inc., Scotto's Service Station, Inc., S.L. Sommers Co., Inc., Michael Varinsky and Westwood, Inc.; Martin F. McMahon, Washington, D.C., of counsel.

## DECISION AND ORDER ON DEFENDANT'S JURY TRIAL DEMAND AND PLAINTIFF'S MOTION TO STRIKE

HOWARD C. BUSCHMAN III, Bankruptcy Judge.

In answering the two complaints served in the adversary proceedings commenced by Harold Young, the Trustee ("Trustee") of this Chapter 7 debtor, Paula Saker & Co., Inc. ("Paula Saker"), several of the defendants demanded, pursuant to Rule of Bankruptcy Procedure 9015 ("Bankruptcy Rules"), a jury trial in these preference actions. Accordingly, they have requested this Court to transfer the action to the United States District Court for the Southern District of New York pursuant to Emergency Rule I, adopted by the Judges of that Court on December 15, 1982.[1] The Trustee responded by motion to strike the

---

1. In the request, it is stated that the Emergency Rule was adopted on December 24, 1982. On its face the Certificate of Chief Judge Motley states that the Rule was adopted on December 15, 1982, and paragraph (h) of the Rule states that it would become effective on December 25, 1982 in the absence of Congressional action.

answer and jury demand in both cases on the ground that they were not timely served.[2]

I

The debtor herein, formerly engaged in the manufacture and sale of women's sportswear, filed a voluntary petition under Chapter 11 of the Bankruptcy Code ("Code"), 11 U.S.C. § 301 (1978), on February 7, 1980. An order for relief converting the case to a Chapter 7 proceeding was entered on August 7, 1980. On August 5, 1983, the Trustee commenced two adversary proceedings, 83–5870A and 83–5871A, against multiple defendants seeking to avoid certain alleged preferential transfers.

The complaints in these two actions are noteworthy in their simplicity. In 83–5870A, it is averred that both Peter J. Saker, Inc. ("Peter Saker") and Allied Design, Inc. ("Allied") were insiders, although the relationship they had with the debtor is not clarified. The Trustee asserts that $59,000 and $68,500 were transferred, respectively to Peter Saker and Allied between 90 days and one year before the filing of the petition on account of antecedent debts and that they were thereby preferred in violation of § 547 of the Bankruptcy Code. In 83–5871A, the Trustee alleges various preferential transfers to each of the defendants within the 90-day period prior to the filing of the petition. Judgment in the amount of the transfers, plus interest and costs, is demanded severally against the defendants in each action.[3]

The time for the defendants to answer or move with respect to the complaints expired on September 8, 1983. On that date, Martin F. McMahon of the firm of Burwell, Hansen, Manley and Peters deposited in the United States mails an answer and jury demand on behalf of all defendants in each case in an envelope addressed to the Clerk of this Court. He avers that a copy of each answer was served on counsel for the Trustee. The Trustee, however, avers that he received the answer and jury demand only in case 83–5870A. Examination of both files relating to these proceedings reveals the following:[4]

1. Defendant Harry Gibson, by his attorney Alexander Levchuck, filed an answer to the complaint in 83–5871A on August 24, 1983.

2. Defendant Harry Kantrowitz Company, by its attorney Seymour Frank, filed an answer in 83–5871A on September 2, 1983;

3. Two copies of the answer and jury demand, without proof of service annexed, were filed by McMahon in this Court on behalf of all defendants, including Gibson and Kantrowitz, in 83–5871A on September 15, 1983;

4. An amended answer and jury demand in 83–5871A were filed on October 25, 1983 along with a letter from McMahon stating that the sole reason for the amendment was to delete his appearance on behalf of Gibson and Kantrowitz who were not his clients;

5. The certificate of service annexed to the amended answer and jury demand refers not to that document but states that the answer was served on September 8, 1983 by depositing the same in the mails;

6. Defendant Stillwater, Inc., by its attorney, Lester A. Lazarus, P.C., filed an answer in 83–5871A on October 18, 1983;

7. Peter Saker and Allied filed an answer and jury demand in 83–5870A on September 15, 1983, together with a certificate of service stating that the same was served

---

2. At the hearing held on the motion, the Trustee withdrew that portion of his motion seeking to strike the answers in each case.

3. Peter J. Saker, Inc. and Allied Design Corp. are named as defendants in Adversary Proceeding No. 83–5870A. The defendants named in Adversary Proceeding No. 83–5871A are: Allied Design Corp., American Packaging Corp., Duo Textiles Inc., Harry Kantrowitz Co., Harry

M. Gibson, Jr., Majestic Shapes, Inc., Scotto's Service Station, Inc., S.L. Sommers Co., Inc., Stillwater, Inc., Michael Varinsky and Westwood, Inc.

4. Subsequent to the hearing on the motion and request, both sides agreed that an evidentiary hearing will not contribute to resolution of the issue and so informed the Court.

by depositing it in the mails on September 8, 1983.

Because the court file contains two copies of the answer and jury demand filed by McMahon in 83–5871A, it appears that the Trustee's contention that a copy of that answer and jury demand was not served on him is confirmed. On the argument of the Trustee's motion to strike, McMahon so conceded, requesting the Court to excuse the lack of service on the Trustee as an oversight. That concession is further buttressed by the curious nature of the certificate of service attached to the amended answer filed by McMahon. Since it was affixed to the answer, one would think that it was meant to refer to that document and that the reference to the answer and the date of September 8, 1983 are erroneous. Were the certificate interpreted literally and in disregard of its being affixed to the amended answer, that document, only one copy of which was filed, would lack a proper certificate. These circumstances, in their totality, compel the finding that the answer and jury demand by McMahon on behalf of his clients in 83–5871A was not served.

It further appears that the amended answer and jury demand in 83–5871A were not served within the 10-day period permitted by Rule 38(b) of the Federal Rules of Civil Procedure and Rule 9015(b)(1) of the Rules of Bankruptcy Procedure or within the 20-day period permitted by Rule 15 of the Federal Rules of Civil Procedure for serving an amended pleading as of right.

## II

■ The Emergency Rule provides that in all "bankruptcy cases and proceedings" referred by the district court, bankruptcy judges may not conduct jury trials and that such "matters which may not be performed by a bankruptcy judge shall be transferred to a district court judge." Emergency Rule ("ER") I(d)(1)(D). Nowhere does the rule state that only the district court is to determine the propriety of a jury trial demand, nor does it command the transfer of a case to a district court judge prior to the completion of pre-trial discovery. Indeed the rule,

in referring all bankruptcy cases and proceedings to this Court and in prohibiting only the conducting of jury trials, on its face, would seem to require this Court to carry out the reference to the point where the case is ready for trial, if such trial is to be before a jury.

Rule 9015(b)(3) of the Rules of Bankruptcy Procedure, promulgated by the Supreme Court with the consent of Congress, expressly vests the Bankruptcy Court with power in Code cases, see Rule 9001(2), to "determine whether there is a right to trial by jury of the issues for which a jury trial is demanded..." The Emergency Rule contains no provision to the contrary and thus, on numerous occasions, the bankruptcy courts have resolved this issue. See, e.g., *Pereira v. Checkmate Communications Co.,* 21 B.R. 402, 403, 6 C.B.C.2d 982 (E.D.N.Y. 1982); *In re Newman,* 14 B.R. 1014, 8 B.C.D. 328 (Bkrtcy.S.D.N.Y.1981); *Busey v. Fleming,* 8 B.R. 746, 7 B.C.D. 252, 3 C.B. C.2d 589 (N.D.Ga.1980).

## III

Particularly is it appropriate for such a determination to be made by this Court when the consequence of an affirmative determination is immediate or ultimate transfer to the district court. If a jury demand is faulty or if the issues are not subject to trial by jury as provided in 28 U.S.C. § 1480 (1978), it would make no sense and serve only the purpose of delay for this Court to transfer a case to the district court merely on the ground that a jury trial had been demanded and for the district court to return it on the ground that a demand had not been timely made.

That reasoning is forcefully applicable here in case 83–5871A where it is plainly apparent that the demand for jury trial was not served timely on the plaintiff.

■ Rule 9015(c) expressly provides that the "failure of a party to *serve* a demand as required by this rule and to file it as required by Rule 5005 constitutes a waiver of trial by jury." (Emphasis added). Rule 9015(b)(1) makes explicit that a demand for

a jury trial is to be made by "serving on the other parties a demand therefor in writing not later than 10 days after service of the last pleading directed to such issue." Although the right to jury trial is a hallmark of this nation's ordered liberty, because the purported demand for a jury trial in 83–5871A was not served on the Trustee or his counsel but instead was filed twice with the Court, it is plain that no demand was in fact made and that the rights of the defendants in that case to a jury trial were waived. *Galella v. Onassis,* 487 F.2d 986, 996 (2d Cir.1973); *Pereira v. Checkmate Communications, Co.,* 21 B.R. 402, 403, 6 C.B.C.2d 982 (E.D.N.Y.1983); *Reefer Express Lines v. Arkwright-Boston Manufacturers Insurance Co.,* 87 F.R.D. 133, 135 (S.D.N.Y.1980).

It is equally plain that the district court would be compelled to reach the same result even without regard to Bankruptcy Rule 9015. Federal Rule of Civil Procedure 38 governs the right to jury trials in the district court. Bankruptcy Rule 9015(b)(1) and (c) track Federal Rule 38(b) and (d) in all respects material here, particularly in their requirement of timely service of the demand.

■ Moreover, it cannot be said that the right to a jury trial was resuscitated by the service of an amended pleading in this case. That pleading was served and filed long after the expiration of the 20-day period provided by Rule 15 of the Federal Rules of Civil Procedure and without the leave of court required by that rule. Thus, we need not even address the issue of whether service of an amended answer with a demand for a jury trial within the prescribed period or upon leave of court would operate to withdraw the waiver of a right to jury trial. Indeed, had the amended answer been in response to an amended complaint, service of an amended complaint does not restore the right to a jury trial except as to issues raised for the first time by the amendment. *Lanza v. Drexel & Co.,* 479 F.2d 1277, 1310 (2d Cir.1973). Here there was no amended complaint to respond to.

■ In attempting to excuse the failure to serve a timely demand for a jury trial in 83–5871A, the demanding defendants claim excusable neglect. They thereby attempt to invoke this Court's discretion pursuant to Rule 9015(d). But no appropriate excuse has been presented. All that has been averred here is that McMahon, fully familiar with the applicable rules, intended to accomplish such service. If that averment were enough, waiver would always be excused. Rather, the discretion afforded by Rule 9015(d) should be exercised in accord with the standards formulated under Rule 39(b) of the Federal Rules of Civil Procedure. There, it is established that a jury trial is waived by its untimely assertion absent cause exceeding the inadvertence alleged here. *Galella v. Onassis,* 487 F.2d at 996–97; *Noonan v. Cunard Steamship Co.,* 375 F.2d 69, 70 (2d Cir.1967).

To be sure, in personal injury cases removed from state to federal court, the trial court has discretion, upon a showing of counsel's unfamiliarity with federal demand requirements, to excuse the lack of compliance. *Cascone v. Ortho Pharmaceutical Corp.,* 702 F.2d 389 (2d Cir.1983); *Higgins ,v. Boeing Co.,* 526 F.2d 1004 (2d Cir.1975); *Unger v. Cunard Line, Inc.,* 100 F.Supp. 472 (S.D.N.Y.1984); *Landau v. National Railroad Passenger Corp.,* 97 F.R.D. 723 (S.D.N.Y.1983).

But that discretion stems, in large measure, from the literal inapplicability of Federal Rule 81(c) to the requirement of N.Y.C. P.L.R. § 4102(a) that a demand for trial by jury be made in connection with the filing of a note of issue, long after issue has been joined, *Higgins v. Boeing Co.,* 526 F.2d at 1007, and the need, under Rule 81(c), to apply N.Y.C.P.L.R. § 4102(e) excusing the failure to make such a demand. *Ibid.* Such discretion is particularly applicable in a removed personal injury case for "no competent personal injury plaintiff's counsel would consciously frame such a complaint and waive a jury." *Landau v. National Railroad Passenger Corp.,* 97 F.R.D. at 725.

This case hardly falls into that category. There is no showing here of counsel's lack

of familiarity with federal practice; indeed counsel's compliance with Rule 9015(b) in 83–5870A demonstrates familiarity. This is not a removed case; nor is it a personal injury case. This, instead, is a traditional bankruptcy case to which the *Noonan* rule applies. The Second Circuit has refused to "consign *Noonan* to overruled status. Its holding shall continue to govern cases where it is applicable." *Cascone,* 702 F.2d at 393. While it may be regretted that adherence to the *Noonan/Galella* standard requiring more than "mere inadvertence" could result in harm to a "hapless client who bears no personal responsibility for this dilemma", *Landau,* 97 F.R.D. at 725, such does not appear to be the case here where the filing of defendant's answers for non-clients in 83–5871A indicates that the demand for a jury trial in both cases was inspired by counsel's reaction to the complaint rather than by the considered decision of his clients. The Trustee's motion to strike the jury demand in 83–5871A as untimely must, per force, be granted.

### IV

■ In case 83–5870A where the demand was apparently served on the trustee, the issue concerns not the timeliness of the demand but whether the defendants thereto possess the right to a jury trial. That right, to the extent "provided by any statute in effect on September 30, 1979," was not affected by the enactment of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598 (1978) (the "Code"). 28 U.S.C. § 1480 (1978).

We thus turn to the first consideration posited: whether under federal law a right to jury trial existed for the type of preference action asserted here. Only if it is concluded that no such right is provided by federal statute or the United States Constitution need it be determined whether state law provided such a right. *Cf. Whitlock v. Hause,* 694 F.2d 861, 863 (1st Cir.1982).

■ Under the Seventh Amendment, the right to jury trial in civil cases depends on whether the proceeding is at law or in equity and consequently, whether there is an "absence of an adequate remedy at law." *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 478, 82 S.Ct. 894, 900, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 509, 79 S.Ct. 948, 956, 3 L.Ed.2d 988 (1959).[5] While this calculus may evolve over time with the expansion of adequate legal remedies, *Beacon Theatres,* 359 U.S. at 509, 79 S.Ct. at 956, the preservation language of the Seventh Amendment also connotes an historical analysis. *Schoenthal v. Irving Trust Co.,* 287 U.S. 92, 94, 53 S.Ct. 50, 51, 77 L.Ed. 185 (1932). There, a bankrupt's trustee sought a decree in equity declaring that certain payments made by the bankrupt were preferential and requiring the defendants to account for and pay to the plaintiff the amounts so received. The payments alleged were of "ascertained and definite amounts" and that no facts were pleaded calling "for an accounting or other equitable relief." 287 U.S. at 95, 53 S.Ct. at 51. Noting the long-established English practice of permitting actions at law in trover and for money had and received for recovery of preferential transfers by bankrupts, the Court held that a properly demanded jury trial was required.

---

5. Several courts, *e.g., In re Sunair International, Inc.,* 32 B.R. 142, 144 (S.D.Fla.1983), contend, relying on *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), that the issue of whether there is a right to a jury trial in a bankruptcy adversary proceeding depends on whether the court has summary or plenary jurisdiction. Others, with equal force, proceed, as we do here, to analyze whether the cause of action alleged lies in equity or is brought at law. *E.g., Pereira v. Checkmate Communications,* 21 B.R. 402, 403, 408, 6 C.B. C.2d 982 (E.D.N.Y.1982). *See* split in authorities noted in *Whitlock v. Hause,* 694 F.2d 861,

863 n. 2 (1st Cir.1982). Those latter cases are supported by the explicit Congressional intention to end the delay and expense incurred by repeated litigation concerning the intricacies of summary versus plenary jurisdiction and the concommitant litigation regarding possible consent to summary jurisdiction. *See In re Ira Haupt & Co.,* 289 F.Supp. 966 (S.D.N.Y.1968). We follow *Pereira* and adopt the *Beacon/Dairy Queen* tests for those reasons and because a summary/plenary analysis ultimately reduces itself to a law/equity analysis. *See In re Sunair International, Inc.,* 32 B.R. at 144.

*Schoenthal* was construed broadly for at least twenty years, so much so, that in *Chichester v. Kramer,* 157 F.Supp. 79 (S.D. N.Y.1957), the court opined that a preference action to recover money or property was presumed to be legal in character. *See* 157 F.Supp. at 81 and cases cited thereat.

That presumption, however, has not survived the decisions in *Beacon Theatres, Dairy Queen,* and *Ross v. Bernard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970).[6] Those cases require the courts, in determining whether a claim is legal or equitable and hence whether there is a cognizable right to a jury trial, not to accept the theory pleaded but to look to the facts to determine if a decree in equity is required. For example,

> [t]he fact that an "accounting" [a traditional equitable remedy] is sought is not of itself dispositive of the jury trial issue. To render this aspect of the complaint truly "equitable" it must appear that the substantive claim is one cognizable only in equity or that the "accounts between the parties" are of such a "complicated nature" that they can be satisfactorily unraveled only by a court of equity. *Kirby v. Lake Shore & Michigan Southern R. Co.,* 120 U.S. 130, 134, 7 S.Ct. 430, 432, 30 L.Ed. 569.

*Dairy Queen, Inc. v. Wood,* 369 U.S. at 480, 82 S.Ct. at 901 (Harlan, J., concurring).

Notwithstanding the restorative nature of a preference or fraudulent conveyance action, the courts, in the main, have employed reasoning similar to that noted above, finding a right to jury trial when the complaint pleads merely the receipt of money in violation of the Bankruptcy Code. *See In re Black & Geddes, Inc.,* 25 B.R. 278, 281, 7 C.B.C.2d 990 (Bkrtcy.S.D.N.Y.1982), and cases discussed therein. But where a cause of action seeking monetary relief is integral to the equitable relief sought, such as the imposition of a constructive trust, *Busey v. Fleming,* 8 B.R. 746, 7 B.C.D. 25, 3 C.B.C.2d 589 (N.D.Ga.1980), the return of an automobile, *Pereira v. Checkmate Communications, Inc.,* 21 B.R. 402, 403, or the reconveyance of property, *Senchal v. Carroll,* 394 F.2d 797 (10th Cir.1968), the action lies in equity with no right of jury trial.

■ In light of this history, the Trustee's reliance on such cases as *In re Otis,* 13 B.R. 279, 4 C.B.C.2d 1333 (Bkrtcy.N.D.Ga.1981) and *In re Carriero,* 21 B.R. 132, 6 C.B.C.2d 1011 (Bkrtcy.W.D.Mass.1982) is misplaced. Those cases like the First Circuit's decision in *Whitlock v. Hause,* 694 F.2d 861 (1st Cir.1982), proceed on the assumption that an action to recover a preference did not lie at common law and springs from the debtor's having become subject to the equitable proceedings created by Congress in enacting bankruptcy legislation. It is reasoned therefore that

> the trustee's avoidance powers do not further some underlying legal claim, but rather are ancillary to a determination which was itself equitable, not legal, in character.

694 F.2d at 864. That reasoning, however, was put to rest in *Schoenthal,* where the court stated that "[s]uits to recover preferences constitute no part of the proceedings in Bankruptcy but concern controversies arising out of it," to be brought at law absent a showing of no adequate legal remedy. 287 U.S. at 94–95, 53 S.Ct. at 51.

Such a remedy, identical to that described in *Schoenthal,* is sought here. No constructive trust is sought, no decree in equity is demanded. The causes of action in both 83–5870A and 83–5871A are merely for money had and received in violation of § 547 of the Code. It is not asserted that any giving of new value, § 547(c), requires

---

6. The factors stated in *Ross v. Bernard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970) are "first, the pre-merger custom with reference to such questions; second, the remedy sought; and, third, the practical abilities and limitations of juries." 396 U.S. at 538 n. 10, 90 S.Ct. at 738 n. 10. In a preference case, the pre-merger custom found by the Supreme Court in *Schoenthal* to direct the inquiry to consideration of the remedy sought and the existence, *vel non,* of our adequate remedy at law. The third issue is adequately explained by Justice Harlan's concurring opinion in *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 480, 82 S.Ct. 894, 901, 8 L.Ed.2d 44 (1962).

the unravelling of complicated accounts between the parties, as described by Justice Harlan. *Dairy Queen, Inc. v. Wood,* 369 U.S. at 480, 82 S.Ct. at 901 (Harlan J., concurring). The motion to strike the jury demand in 83–5870A must be denied.[7]

### V

■ Mere denial of the motion to strike the jury demand, however, does not, *ipso facto,* resolve the request by Peter Saker and Allied to have this Court transfer 83–5870A to the district court so that a jury trial may be held there.

Subsequent to the adoption of the Emergency Rule by the district court, in response to *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court promulgated the New Bankruptcy Rules of Procedure, including Rule 9015, pursuant to 28 U.S.C. § 2075 (1982). Congress did not act with regard to Rule 9015 and accordingly it became effective on August 1, 1983.

In its command that "[i]ssues triable of right by jury, shall, if timely demanded, be by jury" unless the parties stipulate otherwise, Rule 9015(a) could not be more clear. Rule 9015(f) supplements that command by making Rules 47–51 of the Federal Rules of Civil Procedure applicable to jury trials in the bankruptcy courts. The rule's "unmistakable clarity", *Hanna v. Plumer,* 380 U.S. 460, 470, 85 S.Ct. 1136, 1143, 14 L.Ed.2d 8 (1965), affords no room for any construction that bankruptcy courts are not to conduct jury trials but are to refer all such matters to the district courts. Were this a case of statutory interpretation, further inquiry as

to its meaning would be unnecessary. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668, *reh. den.* 425 U.S. 986, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976); *United States v. Campos-Serrano,* 404 U.S. 293, 297–98, 92 S.Ct. 471, 474, 30 L.Ed.2d 457 (1971); *United States v. Bass,* 404 U.S. 336, 339, 92 S.Ct. 515, 518, 30 L.Ed.2d 488 (1971); *Toussie v. United States,* 397 U.S. 112, 120–22, 90 S.Ct. 858, 863–64, 25 L.Ed.2d 156 (1970); *United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961); *In re Saypol,* 31 B.R. 796, 800, 10 B.C.D. 1057 (Bkrtcy.S.D.N.Y.1983). The same reasoning applies here.[8]

In this conflict, Rule 9015 must prevail. *In re Morrissey,* 717 F.2d 100, 9 C.B.C.2d 573 (3d Cir.1983); *Nashville City Bank & Trust Co. v. Armstrong (In re River Transportation Co.),* 35 B.R. 556, 11 B.C.D. 300 (M.D.Tenn.1983). The Third Circuit in *Morrissey* so held with respect to the conflict between the *de novo* review standard of the Emergency Rule and the clearly erroneous standard of Rule 8013 of the new Rules of Bankruptcy Procedure. As it reasoned, local district court rules cannot prevail over nationwide uniform rules promulgated by the Supreme Court in the exercise of its exclusive authority:

First, a statute vests the exclusive power for promulgating rules of bankruptcy in the Supreme Court and the Congress of the United States, 28 U.S.C. § 2075, and not in the United States district courts. Bankruptcy Rule 8013 was promulgated in conformance with this statutory provision. Further, although the new rules quite properly allow each local court to

---

7. The Trustee has also grounded his motion on an apparent violation of Federal Rule of Civil Procedure 11, in light of the defendant's attorney filing of an answer for two parties who were not his clients. Rule 11, however, was recently amended to delete the striking of pleadings from the list of sanctions to be imposed. Presumably this deletion also applies to jury demands. Since the Trustee's concern apparently is that these cases not be transferred to the District Court, we need not address this issue in view of our disposition of this matter. Moreover, the Trustee is no longer pursuing his

motion to vacate the answer in case no. 83–5870A.

8. Although there is isolated legislative history to the Bankruptcy Reform Act of 1978 indicating a view that an Article I court could not conduct a trial by jury, H.R.Rep. No. 595, 95th Cong., 1st Sess. 38 (1978), U.S.Code Cong. & Admin.News 1978, 5787, reliance on such a statement would be erroneous not only because it precedes the adoption of Rule 9015 but also because, as noted in the text, the clarity of the rule precludes resort to that history.

adopt any local rules of practice and procedure it desires, such local rules are clearly subordinate to, and may not be inconsistent with, the national rules. Bankruptcy Rule 9029. Thus, neither the Judicial Conference nor the several district courts of the United States have the authority to propose and enact local bankruptcy rules that conflict with the new bankruptcy rules.

*In re Morrissey,* 717 F.2d 100, 9 C.B.C.2d 573 at 578–579. Indeed, it appears that this reasoning has been implicitly adopted by the district court here and by the Seventh Circuit in applying the clearly erroneous standard rather than the Emergency Rule. *In re Johns-Manville Corp.,* 38 B.R. 331 (S.D.N.Y.1983); *In the Matter of Neis,* 723 F.2d 584, 11 B.C.D. 423 (7th Cir.1983); *but see Salomon v. Kaiser,* 722 F.2d 1574, 1581 (2nd Cir.1983) (dicta).

■ In addition to this reasoning stands the reasoning of the Second Circuit in *Salomon v. Kaiser.* Although the court found bankruptcy jurisdiction in the district court pursuant to 28 U.S.C. § 1334 (1976), it posited the district court's rulemaking authority in the exercise of that jurisdiction and therefore its ability to adopt the Emergency Rule, primarily upon Rule 8018 of the new Bankruptcy Rules which authorizes district courts to promulgate rules regarding bankruptcy appeals. *Id.* at 1579. Just as a river can rise no higher than its source, it would seem that the Emergency Rule cannot take precedence over a set of rules, one of which is said to have authorized its passage.

To these considerations are to be added policy factors of the type principally relied on in *Salomon v. Kaiser.* Like the fraudulent conveyance action there considered, actions to recovery preferences are "traditional bankruptcy disputes." *Salomon v. Kaiser,* at 1580–81. Indeed, they are essential if the bankruptcy process is not to be distorted and inequality among unsecured creditors to result. With respect to such a traditional bankruptcy dispute, "[t]here should be at least one adjudication made by a judge with expertise in bankruptcy law.

There is no assurance that a better initial determination would be made by a district judge." *Salomon v. Kaiser,* at 1581. The same reasoning applies here: there should be at least one determination made by a jury pursuant to instructions formulated, and a motion for judgment notwithstanding the verdict decided, by a judge with expertise in bankruptcy law. There is no assurance that better instructions and a better determination would be made by a district court judge.

Nor can it be gainsaid that referring all jury trials to the district court would serve the purpose of delay because of the district court's "crowded calendars." *Salomon v. Kaiser,* at 1581. The need for speedy trials of criminal cases, *see,* 18 U.S.C. §§ 3161, *et seq.* (1983), seriously impacts those calendars. Retention of such trials in the bankruptcy court would thus give "all litigants a better opportunity to have their day in court." *Salomon v. Kaiser,* at 1581.

■ Retention similarly would afford less opportunity for a party to achieve delay through merely serving and filing a jury demand in cases where the facts are easily ascertained, where issues of credibility would appear to be minimal and where the dispute involves primarily legal issues. Apparently that is the case here. An attorney's filing of a jury demand for two defendants he did not represent serves to indicate that the demand was made primarily to achieve delay.

Such delay is particularly inappropriate with respect to a traditional bankruptcy dispute. The function of a trustee, in large measure, concerns liquidating assets and recovering preferences and fraudulent conveyances so that the creditors of the estate may be paid quickly in accordance with the priorities accorded by the Code. Delay in that process is to be discouraged, not encouraged.

■ As weighty as these considerations are, they would give way in the face of the constitutional considerations articulated in *Northern Pipeline v. Marathon.* But those considerations are unavailing here:

[The Bankruptcy Rules] became effective on August 1, 1983 .... These bankruptcy rules can be presumed to be constitutional. *See Hanna v. Plumer,* 380 U.S. 460 [85 S.Ct. 1136, 14 L.Ed.2d 8] (1965) (Federal Rules of Civil Procedure)....
[I]t is unlikely that the Supreme Court would promulgate procedural bankruptcy rules for the bankruptcy courts and the district courts in 1983 if its 1982 decision in *Marathon* invalidated the jurisdiction of both the bankruptcy courts and the district courts.

*Salomon v. Kaiser,* at 1579. Furthermore, nothing in *Northern Pipeline* indicates any constitutional bar precluding an Article I court from conducting a jury trial.

In fact, jury trials have traditionally been permitted by non-Article I courts, including United States magistrates under 28 U.S.C.A. § 636 (West Supp.1983), special and standing masters appointed pursuant to Federal Rule of Civil Procedure 53, and courts established by Congress in the District of Columbia, *see Pernell v. Southall Realty,* 416 U.S. 363, 370, 94 S.Ct. 1723, 1727, 40 L.Ed.2d 198 (1974); *Capital Traction Co. v. Hof,* 174 U.S. 1, 5, 19 S.Ct. 580, 582, 43 L.Ed. 873 (1899).

*Nashville City Bank & Trust Co. v. Armstrong (In re River Transportation Co.),* 35 B.R. 556, 11 B.C.D. at 303.

Equally significant is that proceedings to set aside preferences are deemed by Section (d)(3)(A) of Emergency Rule I not to be related proceedings. Like an action to impose a constructive trust on the basis of § 548 of the Code prohibiting fraudulent conveyances, a preference action under § 547 of the Code, while it could have been brought in state court,

is inextricably tied to the creation of the estate in bankruptcy for the benefit of Gerald Kaiser's creditors; there would be no cause of action without the federal bankruptcy statutes that authorize it. In

other words, federal law provides the *right* upon which the remedy of the constructive trust sought here is based. In contrast, the action in *[Northern Pipeline, Inc. v.] Marathon* was independent of the bankruptcy laws.

*Salomon v. Kaiser,* at 1582.

 If, as *Kaiser* held, there is no constitutional objection to the bankruptcy court entering a final judgment in a traditional bankruptcy dispute, there can be no similar objection to its conducting a jury trial in order to reach the decision embodied in the judgment. The request to transfer these cases to the district court must be denied.[9]

IT IS SO ORDERED.

---

9. We would also note that the request appears premature. The Federal Rules of Civil Procedure, Rule 16 pre-trial conference, made applicable to bankruptcy proceedings by Bankruptcy Rule 9016 can be held by a bankruptcy judge employing his or her expertise to narrow the issues and shape discovery and to perform the other functions there set forth. The Emergency Rule, as noted, does not command transfer at the pre-trial stage to an overburdened district court.