In re Frank DEPO, etc., Joseph Robert Depo, Bankrupts.

Frank J. DEPO and Joseph Robert Depo, Plaintiffs,

v.

LINCOLN FIRST BANK, N.A., Defendant.

Bankruptcy Nos. 78–2005, 78–2003. Adv. No. 83–CV–654.

United States District Court, N.D. New York.

May 18, 1984.

William R. Morgan, Syracuse, N.Y., for plaintiffs.

Bond, Schoeneck & King, Syracuse, N.Y., for defendant; Joseph Zagraniczny, Syracuse, N.Y., of counsel.

Smith, Sovik, Kendrick Schwartzer & Sugnet, Syracuse, N.Y., for Creditors Committee; Laurence Sovik, Syracuse, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

Frank and Joseph Depo (the "Depos"), debtors-in-possession in a consolidated Chapter XII proceeding, appeal from a decision of the United States Bankruptcy Court for the Northern District of New York (Leon J. Marketos, Bkrtcy. J.)[1], dismissing their complaint against Lincoln First Bank, N.A. ("Lincoln") for lack of subject matter jurisdiction. This court reverses, and remands to the Bankruptcy Court for further consideration of the motions before it.

## PROCEDURAL BACKGROUND

On October 5, 1978, the Depos filed individual petitions under Chapter XII of the Bankruptcy Act of 1898.[2] They were subsequently named debtors-in-possession, and the two petitions were consolidated. In their petitions, the Depos listed Lincoln as a creditor based upon docketed judgments in the amounts of $46,875.03 and $68,893.78; they did not designate such claims as "contingent" or "disputed." Among the assets of the estate set forth in the petition were "shop equipment and furniture held by Lincoln and which relates to the claim of Lincoln," with an attributed value of $75,000, and a contingent and unliquidated claim for breach of contract against Lincoln, with an attributed value of $2,000,000.

Lincoln filed a Proof of Claim on January 9, 1979, listing the two docketed judgments that the Depos had acknowledged in their debt schedule.[3]

On December 11, 1981, two years after filing their petitions, the Depos commenced this adversarial proceeding in Bankruptcy Court against Lincoln. They assert five causes of action. The First and Second causes of action are, essentially, claims of conversion based on allegations that Lincoln wrongfully "exercised dominion" over machinery and equipment owned by the Depos. The plaintiffs seek either the recovery of that personal property or an accounting whereby the value of such property—alleged to be $77,034.00—would be credited against Lincoln's judgment against them.

The Third cause of action is based on allegations that Lincoln improperly conducted a foreclosure sale of certain real property formerly owned by Joe Bombard Chevrolet, Inc., enabling Lincoln to purchase that property with a low bid and resell it at a profit of $46,733.00. The plaintiffs contend that Lincoln's profit constitutes "surplus monies" that should have been marshalled to their favor, as guarantors of the debts of Bombard Chevrolet, Inc.

In their Fourth and Fifth causes of action, the plaintiffs allege that Lincoln wrongfully rejected their offer for the purchase of the real property of Joe Bombard Chevrolet, Inc., and breached an agreement in that regard. They seek restitution of $111,455.00, which represents "the difference between the $294,722 offered by the plaintiffs, and the $183,266.65 due as of the foreclosure sale." *Complaint* ¶¶ 37, 41.

---

1. "Memorandum-Decision, Findings of Fact, Conclusions of Law and Order" dated April 1, 1983 and filed April 4, 1983.

2. The Bankruptcy Act of 1898 was repealed by Act of November 6, 1978, Pub.L. No. 95–598, 92 Stat. 2549 (1978). Chapter XII of the Bankruptcy Act of 1898 provided for "Real Property Arrangements by Persons Other Than Corporations."

3. The Bankruptcy Court decision makes no reference to the Proof of Claim; it may not have been aware of the document's existence. Appellants have, however, submitted to this court a copy of the Proof of Claim which bears the mark "Received and filed Jan. 9, 1979 Office of the Bankruptcy Judge, Utica, N.Y." Judicial notice of the document will be taken.

In its answer to the complaint, Lincoln asserts eight affirmative defenses, including the defense that the "Bankruptcy Court lacks jurisdiction over plaintiffs' causes of action." *Answer* ¶ 58. On October 18, 1982, the plaintiffs moved to compel discovery, and defendant moved for summary judgment on the grounds of lack of subject matter jurisdiction, failure to state a claim upon which relief may be granted, lack of standing, res judicata, collateral estoppel, the statute of limitations, and the statute of frauds. In a *Memorandum Decision, Findings of Fact, Conclusions of Law and Order* dated April 1, 1983, the Bankruptcy Court dismissed the Depos' entire complaint against Lincoln for lack of subject matter jurisdiction. After their petition for reargument was denied, the Depos filed a timely Notice of Appeal to this court.

## FACTS NOT IN DISPUTE

In its decision, as amended by Letter dated April 8, 1983, the Bankruptcy Court identified a series of facts that it considered to not be in dispute. *Mem.-Dec.* 4–7. Although the appellants take issue with particular findings, the facts that are material to the jurisdictional issue before this court are undisputed.

In June, 1974, Lincoln commenced an action against the Depos in New York State Supreme Court, Onondaga County, for breach of the Depos' written guaranty of the obligations of Joe Bombard Chevrolet, Inc. It subsequently secured an order of seizure directing the Sheriff of Oswego County to seize the parts, inventory, equipment, and machinery of Bombard Chevrolet, Inc., which order was executed by the Sheriff on October 16, 1974. The court required an undertaking, which placed the value of the used car inventory, machinery, and equipment seized at $4,000, $3,000 and $10,000 respectively.

On February 3, 1975, Lincoln obtained a default judgment in the amount of $68,840.78 against the Depos in its breach of guaranty action, and was awarded all right and title to Bombard's accounts receivable, machinery, equipment and automobile parts.[4] Lincoln then sold some of the seized material to Stanley Depo and Sons, Inc. for $10,000.[5] New York State received $2,500 of · the proceeds, and Lincoln received the balance, which it offset against the judgment.

On February 7, 1975, Lincoln obtained a default judgment in the amount of $46,806.23 against the Depos for their default in repaying a $50,000 promissory note.

The Depos moved to open both default judgment on or about January 16, 1976. Their motion was denied in Supreme Court, which order was affirmed by the Appellate Division, Fourth Department on January 21, 1977.

Returning to April of 1975, Lincoln commenced an action to foreclose its mortgages on real property owned by Bombard Chevrolet in Phoenix, New York upon which Bombard Chevrolet operated its automobile dealership. The Depos as well as all junior lienors were named as defendants in the foreclosure action; the junior liens totaled approximately $140,000. During the pendency of the action, the Depos negotiated with Lincoln to purchase the property.

By order, dated May 22, 1975, Lincoln was awarded a judgment of foreclosure in the amount of $183,166.65. On July 7, 1975, a foreclosure sale was conducted at which the Depos submitted the highest bid in the amount of $195,000. Their bid was not accepted.[6] After the second highest

---

**4.** The Depos allege in their complaint that they allowed the Bank to take the default judgments to facilitate ongoing negotiations with the Bank regarding their efforts to take over and operate Joe Bombard Chevrolet, Inc. *Complaint* ¶ 4.

**5.** The Bankruptcy Court commented that "The Depos failed to clarify, in their supporting papers, their relationship to Stanley Depo & Sons,

Inc. Consequently, the Court is unable to make a finding in connection with same." *Mem.-Dec.* 16 n. 4.

There may be a dispute as to exactly what materials were seized. Even if so, the dispute is not material to this appeal.

**6.** The Bankruptcy Court found as follows:

bidder withdrew its bid, the property was sold to the third highest bidder, Lincoln, for $180,000.

The Depos failed to object to the referee's report of sale, dated July 17, 1975, which report computed a deficiency of $3,266.65. The referee's deed was duly delivered to Lincoln, and recorded on July 23, 1975 in the Oswego County Clerk's Office.

After the foreclosure sale, Lincoln obtained an order of assistance from the Supreme Court, directing the Sheriff of Oswego County to "evict and dispossess" Bombard Chevrolet, the Depos, and Stanley Depo and Sons, Inc. from the foreclosed premises, and to restrain them from removing, damaging, and dismantling machinery and automobile equipment. The Depos failed to challenge that order. Lincoln instructed the Depos to remove all property owned by Stanley Depo and Sons, Inc. from the premises.

In April of 1976, Lincoln sold the real property and its interest in the "machinery, fixtures and equipment located at the premises" for $230,000.[7] After calculating net proceeds of $15,532.47 from the sale,[8] Lincoln credited that amount against the default judgment against the Depos which related to their guaranty of Bombard's debts. Lincoln calculated a balance of $50,510.70, after the credit, on that default judgment.

Two and one-half years later, the Depos filed their petitions under Chapter XII.

In its decision of April 4, 1983, the Bankruptcy Court held (1) that the Depos' claims relating to Lincoln's purchase of property at the July 1975 foreclosure sale and subsequent resale of that property in April 1976 raised "only state law issues in connection with property which has never been in the possession of this court," Mem.-Dec. at 9, and that jurisdiction under section 23 of the Bankruptcy Act was unavailable since Lincoln had interposed a timely objection, id.; and (2) that the Depos' claims relating to Lincoln's alleged conversion of equipment owned by the plaintiffs are not within the court's jurisdiction because Lincoln's claim to the equipment is not merely "colorable", placing the equipment beyond the "constructive possession" of the court. Mem.-Dec. 13–14.

On appeal the Depos contend (1) that by filing a Notice of Claim, Lincoln irrevocably consented to the summary jurisdiction of the Bankruptcy Court over counterclaims the debtors-in-possession have against it, pursuant to §§ 2(a) and 23(b) of the Bankruptcy Act; (2) that to the extent that their claims would diminish the defendant's claims they constitute a setoff under § 68(a) of the Bankruptcy Act; (3) that the Bankruptcy Court should have exercised its "equitable jurisdiction" over the Depos' claims; (4) that the Bankruptcy Court has jurisdiction over plaintiffs' conversion claim because the Lincoln's claim of title is "colorable only"; (5) that summary judgment was inappropriate because many issues of fact are disputed and subject to discovery. This court finds appellants' first contention persuasive and dispositive, and therefore limits itself to discussion of that issue.

DISCUSSION

■ For proceedings commenced prior to October 1, 1979, such as this one, Bank-

---

15. ... The Depos failed to pay ten percent of the purchase price at the sale and the referee determined that they could not comply with the terms of the sale. Consequently, the referee again auctioned the property.
Appellants take issue with this finding, and allege in their Complaint that the Bank had agreed to finance their purchase of the property, and had otherwise improperly conducted the foreclosure. Complaint ¶¶ 5, 25–27.

7. Appellants allege that in selling the property for $230,000, the Bank breached an agreement and an obligation to sell the property to them

for $294,722. They further allege that the equipment Lincoln sold was "personal property of the plaintiffs to which the Bank had no title." Complaint ¶ 8 and Exhibit A.

8. Lincoln calculated its "net proceeds" of $15,532.47 by subtracting from the $230,000 purchase price outstanding real estate taxes, attorneys fees, and the foreclosure judgment in the amount of $183,166.65. Affidavit of Robert J. Hunt dated Oct. 14, 1982 ¶ 18 (Attached to Lincoln's Motion for Summary Judgment, Doc. # 71).

ruptcy Court jurisdiction is governed by §§ 2 and 23 of the Bankruptcy Act of 1898, formerly 11 U.S.C. §§ 11 and 46.[9] As the Court of Appeals for the Second Circuit has noted, "[t]hese two sections taken as a whole limit summary jurisdiction to matters relating to the administration of the bankrupt's estate, property in the court's constructive or actual possession, and other bankruptcy issues to which the parties expressly or impliedly consent." *In re Eastern Freight Ways, Inc.*, 577 F.2d 175, 182 (2d Cir.1978), *citing, inter alia, Katchen v. Landy*, 382 U.S. 323, 327, 86 S.Ct. 467, 471, 15 L.Ed.2d 391 (1966); 2 Collier on Bankruptcy ¶¶ 23.02–.08 (14th ed. 1976). Absent one of these bases for Bankruptcy Court jurisdiction, the trustee may sue only by initiating a more formal plenary proceeding in the appropriate state or federal court. *In re Eastern Freight Ways, Inc.*, 577 F.2d at 182 n. 14.

The court will assume, *arguendo*, that appellants' claims against Lincoln, based on allegations of Lincoln's misconduct with respect to a foreclosure sale, its re-sale of the foreclosed real property, and its conversion of the Depos' personal property, would involve the Bankruptcy Court in matters beyond the mere administration of the bankrupt's estate, and beyond the determination of competing claims of property in the court's actual or constructive possession. The remaining basis for Bankruptcy Court jurisdiction over appellants' claims is consent, and in that regard the court notes at the outset that Lincoln interposed an objection to jurisdiction pursuant to § 2(a)(7) in its answer to appellants' complaint.

Nevertheless, appellants contend that by filing a proof of claim with respect to the two default judgments it held, Lincoln implicitly and irrevocably consented to summary jurisdiction by the Bankruptcy Court over any counterclaim or set-off the debtors-in-possession could assert.

Commentators on bankruptcy law favor the proposition urged by appellants. As Collier states:

> One who files a proof of claim should be held to acquiesce in the adjudication of any proper set-off or counterclaim even to the extent of a judgment thereon.... He should not be permitted to claim the benefits of such a position, and yet maintain a favored advantage as against the trustee or receiver, compelling that officer to resort to a plenary action to collect on a claim that is a proper subject of set-off or counterclaim. *Collier on Bankruptcy* ¶ 68.20 at 951.

*See also, id.* ¶ 2.40[1.1] at 264–268.3; *Cowan's Bankruptcy Law & Practice* § 576 at

9. § 2. *Creation of Courts of Bankruptcy and Their Jurisdiction.*

   a. The courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are hereby vested ... with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this Act ... to—

   ....

   (2) Allow claims, disallow claims, reconsider allowed or disallowed claims, and allow or disallow them against bankrupt estates.

   ....

   (7) Cause the estates of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto, except as herein otherwise provided, ... and where in a controversy arising in a proceeding under this Act an adverse party does not interpose objection to the summary jurisdiction of the court of bankruptcy, by answer or motion filed before the expiration of the time prescribed by law or rule of court or fixed or extended by order of court for the filing of an answer to the petition, motion or other pleading to which he is adverse, he shall be deemed to have consented to such jurisdiction;

   § 23. *Jurisdiction of United States and State Courts.*

   a. The United States district courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings under this Act, between receivers and trustees as such and adverse claimants, concerning the property acquired or claimed by the receivers or trustees, in the same manner and to the same extent as though such proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.

   b. Suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under this Act had not been instituted, unless by consent of the defendant, except as provided in sections 60, 67, and 70 of this Act.

219 (2d ed. 1978) (suggesting that it is proper for the Bankruptcy Court to exercise summary jurisdiction over both compulsory and permissive counterclaims asserted by the trustee); C. Seligson and L. King, "Jurisdiction and Venue in Bankruptcy," N.Y.L.J. March 19–23, 1962 (expressing similar viewpoint).

However, as these same commentators acknowledge, courts have not embraced the blanket proposition that by filing a claim against the bankrupt, a creditor consents to summary jurisdiction over any counterclaim or set-off. *See In re Bryant,* 626 F.2d 492 (5th Cir.1980) (per curiam) (filing a proof of claim does not subject creditor to counterclaim of Truth-in-Lending Act violations); *In re Los Angeles Trust Deed and Mortgage Exchange,* 464 F.2d 1136 (9th Cir.) *cert. denied* 409 U.S. 1064, 93 S.Ct. 558, 34 L.Ed.2d 518 (1972) (filing a proof of claim does not subject creditor to counterclaim based on unrelated transaction); *In re Carnell Construction Corp.,* 424 F.2d 296 (3d Cir.) *cert. denied* 400 U.S. 828, 91 S.Ct. 56, 27 L.Ed.2d 58 (1970) (Bankruptcy Court does not have jurisdiction over a counterclaim imposed by receiver which is unrelated to creditor's claim).

Courts that have permitted the assertion of the counterclaim usually note at least some relationship between the respective claims asserted by the creditor and the trustee. *E.g., Katchen v. Landy, supra,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (allowance or disallowance of creditor's claim *depended upon* determination of trustee's contention that creditor has received a voidable preference); *1616 Reminc Ltd. Partnership v. Atchsin & Keller Co.,* 704 F.2d 1313 (4th Cir.1983) (bankruptcy court had jurisdiction over compulsory counterclaim asserted by trustee); *In re Eastern Freight Ways, Inc., supra,* 577 F.2d 175 (filing a proof of claim justified bankruptcy court's assertion of summary jurisdiction over trustee's declaratory judgment action where issues were "not entirely disconnected" and other factors favored jurisdiction); *In re Seatrade Corp.,* 297 F.Supp. 577 (S.D.N.Y.1969) (by filing proof of claim, creditor consented to summary jurisdiction of Bankruptcy Court for all compulsory counterclaims).

■ Thus, a review of the cases and authorities indicates that, while the matter is not uniformly settled, the filing of a proof of claim is generally considered to constitute implied consent to Bankruptcy Court jurisdiction over at least any *compulsory* counterclaims asserted by the trustee. Since compulsory counterclaims will by definition be related to the claims against the bankrupt, this principle serves "the overriding policy of the Bankruptcy Act to administer a bankrupt's estate with expedition," *In re Eastern Freight Ways, Inc., supra,* 577 F.2d at 183, by facilitating the resolution of such issues in one summary proceeding. *See Katchen v. Landy, supra,* 382 U.S. at 328–29, 86 S.Ct. at 471–72.

The definition in Rule 13(a) Fed.R.Civ.P. governs the determination of whether any claims asserted by the debtors-in-possession are "compulsory counterclaims." *See 1616 Reminc Ltd. Partnership v. Atchsin & Keller Co., supra,* 704 F.2d at 1315 n. 4. Under that Rule, a counterclaim is compulsory if it

arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

In *United States v. Aquavella,* 615 F.2d 12 (2d Cir.1979), the Court of Appeals explained this Circuit's construction of the Rule:

In determining whether a claim 'arises out of the transaction ... that is the subject matter of the opposing party's claim,' this Circuit has generally taken a broad view, not requiring 'an absolute identity of factual backgrounds ... but only a logical relationship between them." ... This approach looks to the logical relationship between the claim and the counterclaim ... and attempts to determine whether 'the essential facts of the various claims are so logically connected that considerations of judicial

economy and fairness dictate that all the issue be resolved in one lawsuit." *Id.* at 22.

■ In this instance, Lincoln's claims based on the two default judgments and appellants' claims based on the foreclosure sale, subsequent re-sale, and alleged conversion of personal property are sufficiently "logically connected" to satisfy the liberal "transaction or occurrence" test of Rule 13(a): both parties' claims arise out of Lincoln's use of creditor remedies in the wake of the default of Joe Bombard Chevrolet, Inc.

To be sure, it is possible to separately analyze Lincoln's claims based on the default judgments and the Depos' claims based on Lincoln's post-judgment conduct; but their logical relationship as part of one series of events is apparent. For instance, Lincoln calculated credits against one of the judgments for monies it realized from the sale of the foreclosed real property in April of 1976, *Hunt Affidavit* ¶ 20. Although the Depos may not have been entitled to that credit or any further credits, then or now, the point for present purposes is simply to illustrate that the claims based on that judgment and the claims based on Lincoln's deposition of the collateral are not "entirely disconnected." *In re Eastern Freight Ways, Inc.*, 577 F.2d at 183 n. 16.

■ The court therefore holds that, by filing a Notice of Claim, Lincoln implicitly consented to bankruptcy court jurisdiction over the five claims asserted against it by the Depos.[10] Lincoln's subsequent objection did not vitiate that consent, for

once consent to the summary jurisdiction of the bankruptcy court appears, that jurisdiction will be retained for the determination of all claims of the parties and for enforcement of all their rights against each other. *In re Eastern Freight Ways, Inc., supra,* 577 F.2d at 183 n. 16, *quoting* 2 Collier on Bankruptcy ¶ 23.08[1], at 536 (14th ed. 1976).

Consent notwithstanding, Lincoln asserts two independent challenges to Bankruptcy Court jurisdiction over the Depos' claims, both premised on the view that recovery on those claims would only benefit third parties, and not appellants.

Turning first to the claim that Lincoln converted appellee's equipment and machinery, Lincoln argues that

It is undisputed that the parts inventory was sold to Stanley Depo & Sons, Inc. for $10,000. The Depos admit this fact. They allege however, that Stanley Depo & Sons, Inc. purchased Bombard Chevrolet's machinery, equipment, and accounts receivable as well as the parts inventory for the $10,000.... It is fundamental, therefore, that Stanley Depo & Sons, Inc., the title owner, must commence a lawsuit against Lincoln in New York State Supreme Court. The Depos ... lack standing to bring this action in any court, let alone in the Bankruptcy Court....

*Brief for Defendant-Respondent* at 9–10.

Appellants' response to this argument is to urge this court to decline to consider the question inasmuch as it was not ruled upon by the Bankruptcy Court, or to hold that the argument raises questions of fact

---

10. It is appropriate to note here that the Bankruptcy Reform Act of 1978 extended Bankruptcy Court jurisdiction to embrace cases "related to cases under title 11" to obviate jurisdictional disputes such as the one presented here. As the Court of Appeals explained in *In re Turner,* 724 F.2d 338, 340–41 (2d Cir.1984):

Congress's reasons for including the "related to" language in 28 U.S.C. § 1471(b) were explained in H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 42–52, reprinted in U.S.Code Cong. & Ad.News 5787, 5963, 6004–13.... Chief among them was the fact that although the bankruptcy courts had in the past exercised jurisdic-

tion over a wide range of proceedings, 'a considerable part of the trustee's litigation to recover assets of the estate must be initiated in some court other than the bankruptcy court.' *Id.* at 6006. *It was believed that this bifurcation of jurisdiction over matters obviously pertinent to the bankruptcy case no longer served any identifiable policy objective; indeed, it seemed to promote nothing but delay, inconvenience, and the litigation of abstruse jurisdictional issues, all of which tended to work to the prejudice of the estate.* (Emphasis added).

which cannot be decided until appellants' have been afforded full discovery. *Appellant's Reply Brief.*

Although Lincoln refers to appellants' lack of "standing", it appears to this court that the problem is more appropriately analyzed by reference to the scope of Bankruptcy Court jurisdiction, and not by reference to Constitutional or prudential limitations on federal court jurisdiction.

As the District Court stated in *In re Oceana International, Inc.,* 376 F.Supp. 956, 961 (S.D.N.Y.1974):

> Even when property in dispute is in the court's possession, or the adverse party consents to jurisdiction, neither section 2a(7) nor section 23(b) grants jurisdiction over "independent litigations" that are unrelated to the purpose of the particular Bankruptcy Act proceeding.

The court went on to note that unless the proceeding commenced by the trustee is related to the recovery or distribution of assets of the bankrupt estate, it is beyond the scope of bankruptcy court jurisdiction. *See also, Baker & Taylor Drilling Co. v. R.W. Stafford,* 369 F.2d 551 (9th Cir.1966) (Bankruptcy Courts do not take jurisdiction of collateral disputes between third parties unless their settlement is necessary step in reorganization); *Kaplan v. Guttman,* 217 F.2d 481 (9th Cir.1954) (Bankruptcy Court does not have jurisdiction over controversies between third parties not involving debtor or his property); *In re New York and Worcester Express, Inc.,* 294 F.Supp. 1163 (S.D.N.Y.1963) (accord).

This court is also necessarily mindful of the recent Court of Appeals decision, *In re Turner,* 724 F.2d 338 (2d Cir.1983) *reversing* 29 B.R. 419 (N.D.N.Y.1983) (McCurn, J.) which held that the Bankruptcy Court lacked jurisdiction under 28 U.S.C. § 1471(b) to entertain a debtor's conversion claim which could only recover proceeds for the debtor personally, and not for the estate. Despite the breadth of jurisdiction under the new Bankruptcy Code, the court held that "[o]n these facts, there is no showing that Turner's action ... had any 'significant connection' with her bankruptcy case." *Id.* at 341.

The record here tends to support a finding that appellants' First and Second causes of action involve a controversy between Stanley Depo & Sons, Inc. and Lincoln, in which any recovery would be in favor of the corporation, not the debtors personally. If so, such controversy constitutes an "independant litigation" beyond the scope of Bankruptcy Court jurisdiction, irrespective of consent or constructive possession of the disputed property.

■ The Bankruptcy Court did not directly address this question. Inasmuch as resolution will turn on facts that may or may not be in dispute, this court is of the view that the question should be considered by the Bankruptcy Court upon remand, and not decided in the first instance on appeal. Upon remand, the court has the option to allow discovery on this jurisdictional issue prior to determination. Although "the lack of discovery weighs heavily in favor of the party opposing summary judgment," *Zahorik v. Cornell University,* 729 F.2d 85, 91 (2d Cir.1984), the Depos could nevertheless reasonably have been expected to proffer *some* factual basis for claiming the equipment in their own right, as opposed to claiming it on behalf of a non-party corporation, which would be all that is required of them for the purpose of establishing jurisdiction.

Lincoln advances a similar contention with respect to appellants' Fifth cause of action:

> ... the Depos' adversary complaint alleges that Lincoln breached an "oral contract" to sell the Bombard Chevrolet property after the foreclosure sale, but the alleged contract was between Stanley Depo & Sons, Inc. and Lincoln.... The Depos cannot commence a complaint in Bankruptcy Court to enforce a contract to which the debtors are not a party.

*Brief for Defendant-Respondent* at 11.

Here again, the court notes that the Bankruptcy Court does not have jurisdiction to entertain "independant litigation" between Stanley Depo & Sons, Inc. and

Lincoln. The matter is remanded, however, for the Bankruptcy Court to ascertain whether any facts-in-dispute bar a conclusion that the Fifth cause of action is independant of the bankruptcy case.

Finally, Lincoln contends that the Depos could in no event recover on their Third cause of action, which alleged misconduct in Lincoln's handling of the foreclosure, because other lienors would have been entitled to any surplus which could possibly have resulted. Unlike in its prior contentions, in this instance Lincoln does not suggest that the Depos are asserting a claim on behalf of a party not before the court and who could not bring such claims on its own behalf in the Bankruptcy Court. Instead, Lincoln is simply arguing that the Depos will realize no recovery from a claim brought on their own behalf. This argument goes to the merits of appellants' right to recover, and would not undermine the basis for Bankruptcy Court jurisdiction. Like the other grounds advanced by Lincoln on its motion for summary judgment, *i.e.*, that the complaint fails to state a claim, res judicata, collateral estoppel, statute of limitations, and statute of frauds, the issue must be decided *after* the Bankruptcy Court assumes jurisdiction over the controversy, and not as a precondition to jurisdiction.

In conclusion, the court holds that (1) by filing its proof of claim, Lincoln implicitly consented to Bankruptcy Court jurisdiction over the action commenced by the Depos against it; (2) Lincoln's challenge to Bankruptcy Court jurisdiction over the First, Second, and Fifth causes of action is remanded for determination in the first instance by the Bankruptcy Court; (3) Lincoln's challenge to Bankruptcy Court jurisdiction over the Third cause of action is rejected as a matter of law.

The decision of the Bankruptcy Court is reversed and the case remanded for further consideration of the remaining jurisdictional issues, and, where necessary, of the other issues raised by the parties' cross motions (plaintiffs' motion for discovery; defendant's motion to dismiss for failure to state a claim, res judicata, collateral estoppel, statute of limitations, and the statute of frauds).

IT IS SO ORDERED.