In re LOMBARD–WALL
INCORPORATED,
Debtor.

LOMBARD–WALL INCORPORATED,
as Debtor-in-Possession, Plaintiff,

v.

NEW YORK CITY HOUSING DEVEL-
OPMENT CORPORATION, Defendant.

Bankruptcy No. 82 B 11556 (EJR).
Adv. No. 83–6014A.

United States District Court,
S.D. New York.

April 4, 1985.

Cadwalader, Wickersham & Taft, New York City by Edwin David Robertson, W. Ian Laird, Amy A. Marasco, New York City, of counsel, for plaintiff.

Skadden, Arps, Slate, Meagher & Flom, New York City by Dennis J. Drebsky, Cara N. Nash, New York City, of counsel, for defendant.

## OPINION

GOETTEL, District Judge:

The plaintiff, Lombard-Wall Incorporated ("Lombard"), moves pursuant to Local Rule 19(g) of the Civil Rules for the United States District Courts for the Southern and Eastern Districts of New York for an order confirming the Opinion and Report of the Honorable Edward J. Ryan, United States Bankruptcy Judge, acting as a Special Master. The defendant, the New York City Housing Development Corporation ("HDC"), objects to the Special Master's findings. For the reasons stated below, we confirm the Special Master's report in part but decline to adopt his recommendation concerning jury trial.

## I. *Background*

Plaintiff Lombard, an arbitrager, purchases and sells government obligations and other money market instruments. De-fendant HDC, a corporate governmental agency, provides mortgage financing for residential construction with funds raised through the issuance of notes and bonds. Between February 1981, and April 1982, HDC invested the proceeds of some of its note and bond financings with Lombard. During that time, HDC entered into three "repurchase agreements" with Lombard. According to the terms of the agreements, HDC would deposit funds with its fiscal agent, J. Henry Schroder Bank & Trust Company ("Schroder"); Schroder would then purchase securities from Lombard with HDC's funds. Lombard would later repurchase the securities for an amount equal to the purchase price plus a predetermined rate of interest.

Lombard provided Schroder with three irrevocable letters of credit ("LCs") guaranteeing each of its obligations. Chase Manhattan Bank, N.A. issued the LCs on Lombard's behalf. Schroder could only draw on an LC if it could represent that a sum was "due and owing" pursuant to the terms of one of the repurchase agreements.

On August 12, 1982, Lombard filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–1174 (1982). At that time, Lombard had allegedly defaulted on its obligations under the investment agreements. The bankruptcy petition operated as a stay, prohibiting HDC from reselling the securities. *See* 11 U.S.C. § 362 (1982). On August 16, HDC commenced an adversary proceeding in bankruptcy court seeking relief from the automatic stay and seeking an order under 11 U.S.C. § 365 (1982), compelling Lombard to assume or reject the investment agreements to the extent that they were deemed executory contracts. HDC also filed an emergency application for an order vacating the automatic stay pursuant to 11 U.S.C. § 363(f) (1982), and thereby permitting HDC to sell the securities held by Schroder.

On August 18, after extensive negotiations, HDC and Lombard stipulated to a

settlement (the "stipulation" or "settlement") permitting HDC to sell the securities. HDC was to remit to Lombard any proceeds above the amount due at the time of the sale. Judge Ryan approved the settlement on August 18, following a thorough hearing.

Pursuant to the stipulation, Schroder sold the securities. The sale generated an excess of $7,389,980 after deducting the principal and interest due HDC. On August 19, HDC inexplicably caused draws to be made on the first two LCs in the amounts of $225,978 and $1,300,798 respectively.

On March 15, 1983, HDC filed a proof of claim with the bankruptcy court, alleging that Lombard was indebted to it in an undetermined amount. The claim was contingent on the bankruptcy court ruling that HDC had continuing obligations to Lombard. Lombard's reorganization plan was confirmed on July 14, 1983. On October 14, 1983, Lombard commenced the instant action (the "Lombard action") in the bankruptcy court. Lombard's complaint asserts sixteen claims for relief. Claims one through eight concern HDC's draws on the LCs (the "LC claims"). HDC has expressly consented to the bankruptcy court's jurisdiction over the remaining eight claims.

On January 6, 1984, HDC moved this Court, pursuant to Emergency Bankruptcy Rule I(a)(2), to withdraw the reference of the Lombard action from the bankruptcy court and to have it tried before a jury in this Court. HDC contended that Lombard's action involved primarily state common law claims that were only peripherally related to the Lombard bankruptcy proceeding. Citing *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), HDC argued that the bankruptcy court could not constitutionally exercise jurisdiction over those claims.

By order dated January 20, 1984, this Court referred HDC's motion to the Honorable Edward J. Ryan, United Bankruptcy Judge, as a Special Master to hear and report on the motion. On December 14, 1984, after hearing argument and sifting through extensive motion papers filed by the parties, Judge Ryan issued his recommendation. He found that HDC had consented to the bankruptcy court's jurisdiction because (1) it had filed a proof of claim with the bankruptcy court, (2) it had expressly agreed in the stipulation to the bankruptcy court's retention of jurisdiction, and (3) it had failed to object to the jurisdiction clause in Lombard's reorganization plan. He therefore recommended that the motion be denied and that the bankruptcy court retain jurisdiction over the Lombard action. *See In re Lombard-Wall, Inc.,* 44 B.R. 928 (Bankr.S.D.N.Y.1984). Although he thought it unnecessary to determine the nature of the Lombard action, Judge Ryan stated, "the argument that HDC consented to jurisdiction by filing a proof of claim necessarily leads to the conclusion that this action is a core proceeding under 28 U.S.C. § 157(b)(2)(C), and as such arises under bankruptcy law." *Id.* at 932. Judge Ryan also recommended that HDC's motion for a jury trial be denied and rejected a constitutional challenge to the bankruptcy court's power to adjudicate the Lombard action.

Although we find fault with some of Judge Ryan's analysis, we cannot quibble with his ultimate conclusion that the bankruptcy court may adjudicate the Lombard action.[1] In addition, we adopt his finding on the constitutional issue but reject his jury trial analysis.

## II. *Discussion*

### A. Jurisdiction of the Bankruptcy Court

When this motion was originally referred to Judge Ryan, Emergency Bankruptcy Rule I governed the exercise of jurisdiction

---

1. Fed.R.Civ.P. 53(e) provides the applicable standard of review with respect to reports of special masters. A district court is not to reverse the factual findings of a special master unless those findings are clearly erroneous.

Findings of law are entitled to no special deference. *Fogel v. Chestnutt,* 668 F.2d 100, 116–17 (2d Cir.1981), *cert. denied,* 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982).

by the bankruptcy courts. On July 10, 1984, the President signed into law the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "new Act"), Pub.L. No. 98–353, 98 Stat. 340 (1984). That legislation, which superseded the Emergency Rule, provides the appropriate standard for resolution of this dispute. *Romeo J. Roy, Inc. v. Northern National Bank,* 740 F.2d 111, 112 (1st Cir.1984).

■ Section 157 of the new Act regulates the jurisdiction of the bankruptcy courts. Section 157(b)(1) states that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section and may enter appropriate orders and judgments, subject to review under section 158...." 28 U.S.C.A. § 157(b)(1) (West Supp. Sept. 1984).[2] Section 157(b)(2) lists fifteen "core" proceedings. Section 157(c) then delineates the bankruptcy court's jurisdiction over non-core proceedings. This section reads as follows:

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C.A. § 157(c)(1)–(2) (West Supp. Sept. 1984). Logic, together with the structure and layout of section 157, suggests that a party's consent can only vest the bankruptcy court with jurisdiction over non-core proceedings. Core proceedings are subject to the bankruptcy court's jurisdiction regardless of the parties' consent.[3]

■ Only after determining that a proceeding is not a core proceeding should a court consider whether the parties consented to the bankruptcy court's jurisdiction. Judge Ryan focused his analysis on the issue of consent. He should have first considered whether the Lombard action is a core proceeding. It is to this question that we now turn.

Lombard argued before Judge Ryan and before this Court that its action could be classified as a number of different section 157(b)(2) core proceedings. Although Judge Ryan bypassed many of Lombard's arguments, he found that "the bankruptcy court has jurisdiction over this action because it constitutes a core proceeding arising under title 11, as a counterclaim by the estate against a creditor which has filed a claim. 28 U.S.C. § 157(b)(2)(C)." 44 B.R. at 936. We agree with Judge Ryan's finding.

■ "Counterclaims by the estate against persons filing claims against the estate" constitute core proceedings. 28 U.S.C. § 157(b)(2)(C) (West Supp. Sept. 1984). Although this language would appear to extend the bankruptcy court's juris-

---

**2.** Section 157(a) provides, "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 11 U.S.C.A. § 157(a) (West Supp. Sept. 1984).

**3.** To hold that section 157(c)(2) permits the parties to consent to jurisdiction over core proceed-

ings would impute to that provision a redundant purpose.

Of course, permitting the parties to consent to jurisdiction over core proceedings would enable a court to sidestep the question of whether a proceeding is core or noncore. In fact, the Special Master proceeded in this manner. The new Act does not sanction such avoidance.

diction to all counterclaims, courts have traditionally permitted bankruptcy courts to assert jurisdiction over counterclaims by a trustee only when there exists some connection between the claims of the creditor and those of the trustee. *See In re Depo,* 40 B.R. 537, 542 (N.D.N.Y.1984) and citations therein. Adjudication of both the proof of claim and the Lombard action would require interpretation of the investment agreements. In addition, both claims arose out of the same transaction, the 1982 sale of securities. Judge Ryan considered these factors and then correctly concluded that "the LC issue is so logically connected to the proof of claim that judicial economy and fairness dictate they be decided in the same forum." 44 B.R. at 936. The Lombard action is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(C) and, as such, is subject to the bankruptcy court's jurisdiction.[4]

HDC argues that, since the contingency upon which its claim is based has never occurred, the proof of claim will never be prosecuted and any counterclaim is a nullity. We see no reason to distinguish between contingent and non-contingent claims in this context. A contingency does not affect the allowability of a claim, *Matter of Noonan,* 17 B.R. 793 (Bankr.S.D.N.Y.1982), unless the claim is so remote as to render it incapable of proof. *In re Gladding Corp.,* 20 B.R. 566 (Bankr.D.Mass. 1982). HDC's proof of claim was not so remote. Since the contingency could have arisen, a counterclaim to HDC's claim constitutes a core proceeding.

Even if this were a non-core proceeding, we would still hold that the bankruptcy court has jurisdiction because HDC consented to the bankruptcy court's

jurisdiction by entering into the stipulation.[5] The stipulation's third paragraph supplies the only mention of the LCs. That paragraph states, "Lombard hereby agrees that it will not seek to enjoin or otherwise interfere with HDC's asserted right to obtain payment under any letters of credit issued for its benefit by Chase Manhattan Bank, N.A." 44 B.R. at 932. Paragraph eight of the stipulation reads, "the bankruptcy court retains jurisdiction to enforce the terms [of the stipulation] and to resolve any dispute arising therefrom." *Id.*

HDC contends that Lombard's claims relating to the LCs do not arise out of the terms of the stipulation. In support of its contention, HDC cites the following statement made by Judge Ryan during the hearing on the stipulation: "I have no issue to decide ... with respect to Chase's liability." Transcript of Hearing to Dispose of Collateral, at 39 (Aug. 18, 1982). According to HDC, neither the bankruptcy court nor the stipulation directly addressed HDC's rights to draw on the LCs.

The Special Master found that HDC's deliberately evasive statements precipitated the bankruptcy court's statements and were, in large part, responsible for the stipulation's failure to explicitly address the bankruptcy court's jurisdiction over the Lombard action. This factual finding is not clearly erroneous. At the hearing on the stipulation, Judge Ryan asked HDC whether it intended to draw on the LCs. HDC's response was noncommittal. HDC failed to disclose that, prior to the hearing, it had instructed Schroder to draw on the March 23, 1981, letter of credit. It is fair to assume that, had HDC offered this information, the stipulation would have speci-

---

4. Although we have only considered section 157(b)(2)(C), our analysis should not suggest that the Lombard action fits only within that subsection of section 157(b)(2). It may fit within other subsections as well.

5. HDC contends that parties cannot confer subject matter jurisdiction on a court by consent and that, therefore, any consent—express or implied—will not suffice to confer jurisdiction on the bankruptcy court. If the Lombard action is

a non-core proceeding, consent is a prerequisite to the court's obtaining subject matter jurisdiction. However, consent is not the sole basis for that jurisdiction. The Lombard action must also be "related to" the bankruptcy proceeding. Given this additional nexus, the consent requirement does not defeat the bankruptcy court's jurisdiction. *Collins v. Foreman,* 729 F.2d 108, 119 (2d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984).

fied the amounts that could or could not be drawn on the LCs. The bankruptcy court's statement regarding the absence of any issue with respect to Chase's liability was simply another response to HDC's silence.

At the hearing, HDC was in a position to discuss the LC issues. Because HDC failed to do so, the stipulation was less than explicit with regard to the LCs. To now cite this ambiguity as support for its position strikes us as disingenuous. Moreover, although the stipulation does not state explicitly that HDC consents to the bankruptcy court's jurisdiction over the LC dispute, we believe it is susceptible to such a reading. HDC drew on the LCs because it was not made whole by the sale of securities provided for in the stipulation. The LC issue thus arises from the stipulation. Together with the wording of the stipulation, HDC's conduct convinces us to construe the stipulation as authorizing the bankruptcy court to adjudicate the LC dispute.

■ A soon-to-be-published article forwarded to us by HDC's counsel suggests that implied consent cannot vest the bankruptcy court with jurisdiction under section 157(c)(2). Norton and Lieb, *Jurisdiction and Procedure Under the 1984 Bankruptcy Amendments*, at 159 (March 1, 1985) (to be published in Norton, 7 *Bankruptcy Law and Practice*). According to the authors, permitting implied consent would violate a significant provision of Article III since "a non-consenting party would be forced to have a non-Article III judge as the adjudicator of a common law cause of action." *Id.* Although we hesitate to sanction any procedure that might overstep the bankruptcy court's jurisdiction, we see no evidence in section 157(c)(2) to suggest altering the traditional rule that consent can be

both express and implied. *In the Matter of Jan Wiktor Kakolewski*, 29 B.R. 572 (Bankr.W.D.Mo.1983); *In re Depo, supra*, 40 B.R. 537; 2 *Collier on Bankruptcy* ¶ 23.08, 532–60 (14th ed. 1976).[6]

## B. Right to Jury Trial

The Special Master also recommended that we deny HDC's demand for a jury trial. The Special Master found that, because HDC had impliedly consented to the bankruptcy court's jurisdiction, HDC had no constitutional right to a jury trial in an Article III court.

■ We note first that the parties have proceeded to this point under the mistaken assumption that a jury trial is unavailable in the bankruptcy court. They have apparently overlooked rule 9015 of the Rules of Bankruptcy Procedure, which govern procedures in the United States Bankruptcy Courts, and which permits the bankruptcy courts to hold jury trials. The advisory committee notes to Rule 9015 confirm this interpretation. The notes speak of "the procedures for requesting trial by jury in a matter [before the] ... bankruptcy court." Bankr.Rule 9015 advisory committee note.[7]

■ Having concluded that the bankruptcy court may hold a jury trial, it remains for us to consider whether such a trial is appropriate in these circumstances. Section 1480(a) of the Bankruptcy Code, 28 U.S.C. § 1480(a) (1982), is the starting point for this analysis. That section provides, in pertinent part,

... this Chapter and Title 11 do not affect any right to trial by jury, in a case under Title 11 or in a proceeding arising under Title 11 or arising in or related to a case under Title 11, that is provided by

---

6. Judge Ryan also found that HDC impliedly consented to the bankruptcy court's jurisdiction by failing to object to the retention of jurisdiction provision in the Lombard reorganization plan. 44 B.R. at 935. Our finding that HDC consented to the bankruptcy court's jurisdiction, makes it unnecessary for us to review this finding.

7. Recent cases have held that the bankruptcy court is empowered to conduct jury trials under the new Bankruptcy Rules of Procedure. *Young v. Peter J. Saker Inc.*, 37 B.R. 802, 11 Bankr.Ct.Dec. 743, 748 (Bankr.S.D.N.Y.1984); *Martin Baker Well Drilling Inc. v. Koulovatos (In re Martin Baker Well Drilling Inc.)*, 36 B.R. 154, 158 (Bankr.D.Me.1984); *Nashville City Bank & Trust Co. v. Armstrong (In re River Transport)*, 35 B.R. 556, 559 (Bankr.M.D.Tenn.1983).

any statute in effect on September 30, 1979.

28 U.S.C. § 1480(a) (1982). In other words, a defendant must be afforded a jury trial if it had a right to a jury trial in this kind of action prior to 1979. A three-pronged test controls that inquiry. The test requires that the court consider the pre-merger custom with reference to such questions, the remedy sought, and the practical abilities and limitations of juries. *Ross v. Bernhard*, 396 U.S. 531, 538 n. 10, 90 S.Ct. 733, 738 n. 10, 24 L.Ed.2d 729 (1970). If each of these inquiries suggests the availability of a jury trial, the parties are entitled to such.

█ The third test need not detain us. This case is not so complex or difficult as to be beyond the practical abilities of a jury. The second prong also requires little comment. The complaint exclusively seeks a legal remedy, $1.7 million in damages. Neither party has directed us to any authority on the pre-merger custom with respect to actions like the Lombard action. Nevertheless, we are confident that an action like this, that involves primarily state law claims of fraud, conversion, breach of warranty, and misrepresentation, would have been tried in a court of law. Consequently, HDC's motion for a jury trial is granted.

### C. The Constitutional Challenge

█ HDC contends that Judge Ryan improperly rejected its constitutional challenge to the jurisdiction of the bankruptcy court under the new Act. In its objection to Judge Ryan's report, HDC states, "The Report erroneously states that HDC did not raised [*sic*] a direct constitutional challenge to the jurisdiction of bankruptcy judges under the 1984 Act." Objection to Opinion and Report of the Honorable Judge Edward J. Ryan, United States Bankruptcy Judge, as Special Master and Response to Motion to Confirm Pursuant to Fed.R. Civ.P. 53(e)(2) at 14. Judge Ryan's factual finding in this regard is not clearly erroneous.

█ Moreover, in *In re Benny*, 44 B.R. 581 (N.D.Ca.1984), the District Court for the Northern District of California emphatically rejected a constitutional challenge to the jurisdiction of the bankruptcy court under the new Act. Those attacking the new Act in *Benny* argued that the terms of bankruptcy judges expired on June 27, 1984, and that Congress was without power to retroactively appoint the former bankruptcy judges to their previous posts without nomination by the President and approval by the Senate. The court, however, held that all bankruptcy judges were entitled to perform their duties because either (i) the bankruptcy judges were in office on July 10, 1984, the date the new Act became effective, and were thus continued in office pursuant to the new Act, a power concededly within legislative power; or (ii) even if the terms of bankruptcy judges expired on June 27, 1984 (the termination date of the transition period under the Bankruptcy Reform Act of 1978, pursuant to which all bankruptcy judges in office in 1978 were automatically continued in office), the new Act retroactively extended the terms of bankruptcy judges. This was within Congress' undoubted authority to create an office, establish and modify its scope and term, and designate officers previously appointed by the judiciary to remain in office. *Id.* The *Benny* court's reasoning persuades us to reject HDC's constitutional challenge.

### III. *Conclusion*

The motion to confirm the report of the Special Master is granted in part and denied in part. The Lombard action must be tried by a jury in the bankruptcy court. HDC's motion to withdraw the reference is denied.

SO ORDERED.