In re **DURSO SUPERMARKETS, INC., Debtor.**

**DURSO SUPERMARKETS, INC., Plaintiff,**

v.

**Florence B. D'URSO, Trustee, as Assignee of Florence B. D'Urso, Executrix of the Estate of Camillo J. D'Urso, Deceased, Defendant.**

No. 93 Civ. 3999 (LLS).

United States District Court, S.D. New York.

July 7, 1994.

*This action is pending, apparently in its early* stages.

Richard H. Dolan, Schlam, Stone & Dolan, New York City, Burton S. Weston, Law Offices of Burton S. Weston, Manhasset, NY, Stephan B. Gleich, Stephan B. Gleich & Assoc., Great Neck, NY, for defendant.

## OPINION AND ORDER

STANTON, District Judge.

Defendant Florence B. D'Urso ("D'Urso") moves (1) to withdraw the reference to the bankruptcy court, pursuant to 28 U.S.C. §§ 157(d) and 1334(a), of an adversary proceeding[1] brought against her by Durso Supermarkets, Inc. ("DSI"), in DSI's Chapter 11 bankruptcy case; (2) to compel arbitration of one of DSI's claims therein; (3) for dismissal of the remaining claims under the permissive abstention provision of 28 U.S.C. § 1334(c)(1); and (4) for relief from the automatic stay. In a supplemental motion, D'Urso also moves to dismiss the Amended Complaint against her pursuant to Fed. R.Civ.P. 12(b), or in the alternative for summary judgment.[2]

## BACKGROUND

DSI's Amended Complaint alleges claims for fraud and breach of contract arising out of D'Urso's sale of DSI to T.F. Acquisition Corp. ("TFA"), a corporation which later merged into DSI. DSI claims that D'Urso (in her earlier capacity as executrix) fraudulently concealed approximately $6,000,000 in tax liabilities, overstated assets and understated other liabilities by more than $4,000,000, and otherwise misrepresented DSI's financial condition in order to make DSI more attractive to potential purchasers. DSI also alleges that D'Urso failed to perform certain of her obligations under the stock purchase agreement.

1. *Durso Supermarkets, Inc. v. Florence B. D'Urso,* Bankruptcy Adv. No. 92–9461–A (PBA) (Bankr. S.D.N.Y.) (the "Action").

## DISCUSSION

■ 1. Pursuant to 28 U.S.C. § 157(d), a "district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] on its own motion or on timely motion of any party, for cause shown." As the Court of Appeals has stated:

> Section 157(d) does not define the term "cause." District courts in this circuit have considered a number of factors in evaluating cause: whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law.
>
> A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn.

*In re Orion Pictures Corp.,* 4 F.3d 1095, 1101 (2d Cir.1993) (citations omitted), *cert. dismissed,* —— U.S. ——, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994). Section 157(b)(2) provides a nonexhaustive list of core proceedings. *In re Manville Forest Prods. Corp.,* 896 F.2d 1384, 1389 (2d Cir.1990).

■ DSI claims that the Action is core under either 157(b)(2)(C), which classifies as core all "counterclaims by the estate against persons filing claims against the estate," or the catch-all category of 157(b)(2)(O), which includes all "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." According to DSI, because D'Urso has submitted a proof of claim in the bankruptcy proceeding, and because that proof of claim arises out of the same transaction as the Action, the Action should be considered a "counterclaim" for the purposes of 157(b)(2)(C). *See In re Fang Operators, Inc.,* 158 B.R. 643, 647–48 (Bankr.N.D.Tex. 1993) (turnover complaint by debtor con-

2. By Memo Endorsement dated November 2, 1993, the court permitted DSI to defer its response to the supplemental motion until after the court's decision on D'Urso's motion to withdraw the reference.

strued as counterclaim where it arose "from the same transactional basis as defendants' proof of claim" and where "decision on the Debtor's complaint will be dispositive of the defendants' claims against the estate"); *In re Bar M Petroleum*, 63 B.R. 343, 347 (Bankr. W.D.Tex.1986) (debtor's adversary proceeding asserting claims for breach of contract and breach of warranty, brought after creditor filed proof of claim, constituted core proceeding under 157(b)(2)(C) and 157(b)(2)(O), as it arose "out of the same transaction as Defendant's claim"); *In re Lombard–Wall, Inc. v. New York City Hous. Dev. Corp.*, 48 B.R. 986, 990–91 (S.D.N.Y.1985) (debtor's action was counterclaim under 157(b)(2)(C) where both claims arose out of same transaction, and both claims would require interpretation of same agreements; court noted that "courts have traditionally permitted bankruptcy courts to assert jurisdiction over counterclaims by a trustee only when there exists some connection between the claims of the creditor and those of the trustee"); *Macon Prestressed Concrete Co. v. Duke*, 46 B.R. 727, 730 (M.D.Ga.1985) (debtor's objection and counterclaims to creditors' claims based on promissory notes constituted core proceeding under § 157(b)(2)(C) where objection based on creditor's alleged fraud and material misrepresentations in the transaction giving rise to the promissory notes), *overruled on other grounds, Tidwell v. Omni Petroleum, Inc.*, 164 B.R. 188 (M.D.Ga.1994).

Here, however, D'Urso's proof of claim is based on a state court judgment. Although that judgment was the result of a lawsuit based on a promissory note and mortgage that formed part of the stock sale that is the subject of the Action, the operative "transaction" giving rise to the proof of claim is the judgment itself, not the underlying facts on which it is based. *See Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir.1987) (" 'Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so....' Bankruptcy courts fall within Congress' mandate"), *cert. denied*, 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988).

■ Nor is the Action "core" under § 157(b)(2)(O). DSI's claim of fraud may, if successful, enlarge the estate; however, that fact without more does not affect "the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship". *See In re Nanodata Computer Corp.*, 74 B.R. 766, 770–71 (W.D.N.Y.1987) (rejecting debtor's argument that its action asserting claims of breach of warranty, breach of contract, intentional misrepresentation, negligent misrepresentation, and negligent supervision of a licensee, against creditor who had filed proof of claim, could constitute core proceeding under 157(b)(2)(O) by virtue of its importance to the debtor's reorganization efforts); *cf. In re Orion Pictures Corp.*, 4 F.3d at 1102 (prepetition contract action not core proceeding under § 157(b)(2)(A), which classifies as core all "matters concerning the administration of the estate", even if it would be expected to inure to the benefit of the estate).

DSI's claims of fraud and breach of contract are not encompassed by any of the categories of § 157(b)(2), nor do they otherwise arise under title 11. The Action is non-core.

■ "[O]nce a district court makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *In re Orion Pictures Corp.*, 4 F.3d at 1101.

■ Those factors militate in favor of withdrawal of the reference of the Action. Because the Action is non-core, determinations made by the bankruptcy court would be subject to *de novo* review by this court. Thus, "unnecessary costs could be avoided by a single proceeding in the district court." *Orion*, 4 F.3d at 1101. Moreover, DSI has agreed that for the purposes of this motion, (*see* DSI's Mem.Opp.Mot. at 19), it may be assumed that D'Urso will be entitled to a jury trial on DSI's claims against her. "[T]he constitution prohibits bankruptcy courts from holding jury trials in non-core matters." *Orion*, 4 F.3d at 1101. The Action will be withdrawn from the bankruptcy court.

■ 2. D'Urso moves to compel arbitration of the Action's First Claim for Relief, which alleges that the final financial statements submitted to TFA by D'Urso in connection with the stock transaction overstated DSI's assets and understated liabilities by approximately $1,500,000. D'Urso claims that Section 2.02(h) of the Stock Purchase Agreement[3] obligates DSI to arbitrate any objections to the final financial statements.

■ The Court of Appeals has stated that " 'unless it can be said "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," the dispute should be submitted to arbitration.' " *Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 48 (2d Cir.1993) (quoting *Concourse Village, Inc. v. Local 32E*, 822 F.2d 302, 304 (2d Cir.1987)).

The language of § 2.02(h) may readily be interpreted as an expression of intent to arbitrate any disputes regarding the final financial statements. Accordingly, D'Urso's motion to compel arbitration of the First Claim for Relief is granted. D'Urso is also granted relief from the automatic stay to the extent necessary to pursue arbitration of that claim.

■ 3. D'Urso asks the court to abstain, pursuant to 28 U.S.C. § 1334(c)(1), from considering DSI's Second through Ninth Claims for Relief. That statute states:

Nothing in this section prevents a district court in the interest of justice, or in the interest or comity with State courts or respect for State law, from abstaining from

hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

This non-core Action presents no issue of bankruptcy law; rather, it alleges only state law claims of fraud and breach of contract. Jurisdiction over the Action is based solely on DSI's bankruptcy. (*See* Am.Compl. ¶ 1.) Nothing in the record suggests that DSI's claims cannot timely be adjudicated in a state court, and any recovery by DSI in a state court may be appropriately administered by the bankruptcy court. Accordingly, this court will abstain from exercising its jurisdiction over DSI's Second through Ninth Claims for Relief, which are dismissed without prejudice. *See In re Titan Energy, Inc.*, 837 F.2d 325, 333 (8th Cir.1988) ("Abstention is further appropriate where the action could not have been commenced in federal court absent bankruptcy jurisdiction and the issues can be timely adjudicated in state court"); *Channel Bell Assocs. v. W.R. Grace & Co.*, No. 91 Civ. 5485 (PKL), 1992 WL 232085, at *8 (S.D.N.Y.1992) (abstaining under mandatory abstention provision of § 1334(c)(2), but noting that discretionary abstention under § 1334(c)(1) would have been appropriate where parties to action were both nondebtors, plaintiff's claims based exclusively on state law, action only tangentially related to bankruptcy proceeding, and no basis for federal jurisdiction other than § 1334(b)); *In re Craft Architectural Metals Corp.*, 115 B.R. 423, 431–32 (E.D.N.Y.1989); *In re Verrazano Holding Corp.*, 86 B.R. 755, 763–64 (Bankr. E.D.N.Y.1988) (abstaining under § 1334(c)(1)

---

**3.** Section 2.02(h) of the Stock Purchase Agreement states:

The Final Financial Statements and the amount of any required adjustment to the Purchase Price as set forth in the Purchase Price Report shall be final and binding on the parties (subject to Article IX hereof) unless, within fifteen (15) days after delivery to the parties, notice is given by either party to the other of its objection. If notice of objection is given, the parties shall consult with each other with respect to the objection. If the parties are unable to reach agreement within fifteen (15) days after the notice of objection has been given, the dispute shall be resolved by a firm of independent accountants of nationally recognized standing selected by the parties (other than WL or Buyer's accountants) (the "Unrelated Accounting Firm"). In the event the

parties are unable to agree upon selection of the Unrelated Accounting Firm, either party may apply to the American Arbitration Association in the city of New York for designation of such firm and the firm designated by the American Arbitration Association shall be the Unrelated Accounting Firm. The resolution of the dispute by the Unrelated Accounting Firm shall by final and binding on the parties. The fees and expenses of the Unrelated Accounting Firm shall be borne equally by Seller and Buyer.

Article IX of the Stock Purchase Agreement governs "Indemnification and Related Matters," and, *inter alia*, requires claims for misrepresentation and breach of warranty to be asserted in writing within 36 months from the date of closing. *See* § 9.07.

216

where claim required interpretation of state contract and tort doctrine, and no diversity jurisdiction or bankruptcy issues existed); *In re Naugatuck Dairy Ice Cream Co., Inc.*, 106 B.R. 24, 28–29 (Bankr.D.Conn.1989) (listing factors to be considered under § 1334(c)(1), and abstaining from hearing claim in the absence of federal question or diversity jurisdiction where pending parallel state court action raised similar issues of state law and trustee's bankruptcy counterclaims based wholly on state law).

## CONCLUSION

D'Urso's motion to withdraw the reference of the Action and to compel arbitration of the First Claim for Relief is granted, and the remainder of the claims are dismissed without prejudice under 28 U.S.C. § 1334(c)(1). Relief from the automatic stay is granted to the extent necessary to allow that arbitration and litigation of those claims. D'Urso's supplemental motion is denied without prejudice, as moot.

So ordered.